# Commonwealth *v.* Richardson, Appellant.

*Criminal law—Constitutional law—Conspiracy—Common-law conspiracy—Evidence—Self-incriminating testimony.*

1. A conspiracy at common law is where two or more persons combine, confederate and agree together to do an unlawful act, or to do a lawful act by the use of unlawful means.

2. Even though no indictment can be brought under secs. 127 and 128 of the Act of March 31, 1860, P. L. 382, for conspiring to bribe and corrupt councilmen in the performance of their public duties, such an indictment may be maintained at common law.

3. The Act of April 29, 1874, P. L. 115, which was passed to carry into effect sec. 31, of art. III of the constitution, applies only to an attempt to bribe, and not to a conspiracy to bribe.

4. At common law no overt act is necessary to constitute the offense of conspiracy. In order to render the offense complete, there is no occasion that any act should be done, or that any one should be aggrieved or defrauded in pursuance or in consequence of the unlawful agreement.

5. The mere fact that the testimony was given by a witness in a judicial proceeding against a person charged with the offense of bribery is not a conclusive bar against the use of that testimony against the witness in a subsequent judicial proceeding against him. It is only a bar where it was given under some sort of compulsion. The words "such testimony" in sec. 31, art. III, does not mean any testimony, but such as the person may have been "compelled to testify."

6. Where the record of the prior case fails to show that the accused in the later case testified in obedience to a subpœna, or under any compulsion, and also fails to show that he demurred to answering any question upon the ground that the answer might incriminate him, or on any other ground, the prior testimony of the accused may be used against him.

Argued Oct. 17, 1910. Appeal, No. 101, Oct. T., 1910, by defendant, from judgment of Superior Court, at No. 46, April T., 1910, affirming judgment of Q. S. Allegheny Co., June Sessions, 1907, No. 50, on verdict of guilty in case of Commonwealth v. Charles R. Richardson. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment for conspiracy to bribe and corrupt a councilman. Before FRAZER, P. J.

The facts appear in the report of this case in 42 Pa. Superior Ct. 337, and in the opinion of RICE, P. J., as follows:

After averring by way of inducement that there was pending and undetermined in the councils of the city of Pittsburg a certain ordinance for the proposed grant of certain franchises to the Pittsburg & Tube City Railroad Company, the count of the indictment under which the appellant was convicted charged, in substance, that the defendants unlawfully did falsely conspire and agree together, and with other persons, whose names were to the grand inquest unknown, to tempt, solicit, bribe, corrupt and influence certain members of the city councils in the performance and discharge of their public and official duties in relation to the ordinance referred to, and to procure their votes and official influence in favor of the enactment of the same and the grant of the franchises to the railroad company, by the use directly and indirectly of large sums of money and other things of value and personal advantage to the said members of councils, to the prejudice of the city and divers citizens and residents thereof, contrary to the form, etc.

.It is suggested in the course of the printed argument of the appellant's counsel upon the first, fifteenth, sixteenth and seventeenth assignments of error, that neither secs. 127 nor 128 of the penal code (Act of March 31, 1860, P. L. 382) comprehends such conspiracy as was laid in the indictment. This is certainly true of sec. 127, and for present purposes it may be conceded to be true of sec. 128. This, however, is not a conclusive reason for holding the indictment to be bad. If there were no statute upon the subject of criminal conspiracy, an indictment for such conspiracy as is here alleged would lie at common law. No implication of an intention on the part of the legislature to abrogate or supersede the common

law as to all criminal conspiracies arises from legislation
defining particular conspiracies and prescribing the pen-
alty therefor.   The principles enunciated in Com. v.
McHale, 97 Pa. 407; fully sustain the first of these propo-
sitions, and Wilson v. Com., 96 Pa. 56, is authority for
both of them.   Speaking of sec. 128 of the penal code, the
court said: "An examination of this section shows that
it is confined to conspiracies to cheat and defraud, just
as the previous section (127) relates to conspiracies to
indict.   A conspiracy at common law is a much broader
offense, and embraces cases where two or more persons
combine, confederate and agree together to do an un-
lawful act, or to do a lawful act by the use of unlawful
means.   Section 128 of the code does not, nor was it in-
tended to interfere with the indictment and punishment
of a common-law conspiracy."   See also Com. v. Stam-
baugh, 22 Pa. Superior Ct. 386; Com. v. Brown, 23 Pa.
Superior Ct. 470.

It is urged that sec. 1 of the Act of April 29, 1874, P. L.
115, which was passed to carry into effect sec. 31, art. III,
of the constitution, provides specifically for attempted
bribery, defines the offense, names it corrupt solicitation,
declares it to be a misdemeanor, and fixes the penalty,
and therefore sec. 183 of the penal code, comes into op-
eration and prevents any penalty being inflicted or any-
thing being done agreeably to the common law in such
case.   It is to be observed, however, that the act of 1874
relates only to a "person or persons who shall directly or
indirectly, by offer or promise of money, office, employ-
ment, testimonial or other thing of value, or who shall by
threats or intimidations endeavor to influence," etc.
There is a plain and substantial distinction between an
attempt to bribe and a conspiracy to bribe; for at common
law no overt act was necessary to constitute the offense
of conspiracy, and neither the act of 1874 nor any other
act has changed the rule in Pennsylvania, at least so far
as the particular kind of conspiracy under consideration
is concerned: Collins v. Com., 3 S. & R. 220; Com. v.

McKissen, 8 S. & R. 420; Wilson v. Com., 96 Pa. 56; Brown v. Com., 23 Pa. Superior Ct. 470. "It has been repeatedly ruled that in order to render the offense complete there is no occasion that any act should be done, or that any one should be aggrieved or defrauded in pursuance, or in consequence, of the unlawful agreement:" GORDON, J., in Heine v. Com., 91 Pa. 145. The doctrine of the case of Com. v. Railing, 113 Pa. 37, does not rule the question before us. The point there decided was that sec. 87 of the penal code took the crime therein specified, procuring miscarriage resulting in the death of the child or woman, out of the class designated as murder, made it a felony of lesser grade and prescribed the punishment therefor. But here, as has been seen, all the essential elements of a complete offense at common law may be proved without proof of the acts which constitute the statutory offense of corrupt solicitation. The thought is well expressed by the learned trial judge in the opinion overruling the motion for new trial as follows: "In this case, therefore, if Richardson combined with others to corruptly influence councilmen, and the verdict established that he did do so, he was guilty of conspiracy, before he ever met Martin who was a member of council and to whom the commonwealth claims corrupt propositions were made. It was for that offense, namely, the combination and confederation, that defendant was tried and convicted," where a count in an indictment does not charge a statutory offense, yet, but for the words contrary to the form of the act of the general assembly in such case made and provided, is a well drawn count for a common-law offense, those words may be rejected as surplusage: Com. v. Kay, 14 Pa. Superior Ct. 376, and cases there cited. We conclude that the indictment and the evidence were sufficient to sustain a conviction of common-law conspiracy; therefore, the first, fifteenth, sixteenth and seventeenth assignments of error are overruled.

The matters complained of in the remaining assign-

ments of error may be embraced under two general heads: First, the admission in evidence, in the presentation of the commonwealth's case in chief, of a duly proved transcript, in longhand, of the official stenographic notes of the testimony given by the appellant, as a witness on behalf of the commonwealth, on the trial of an indictment against William A. Martin; second, permitting the district attorney upon the cross-examination of the appellant to read to him in the hearing of the jury certain portions of the transcript, and to interrogate him as to whether he had so testified on the trial of the Martin case. The objections made on the trial to these offers were that they were incompetent and irrelevant. The specific objection urged here is that the rulings contravened the provisions of sec. 32, art. III, of the constitution of this commonwealth which so far as material here reads as follows: "Any person may be compelled to testify, in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation or practice of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterward be used against him in any judicial proceeding, except for perjury in giving such testimony." It is claimed by the commonwealth's counsel in opposition to this contention that no part of the former testimony was read to the jury except those parts which were embraced in the questions put to the appellant upon his cross-examination, and that these parts were not criminating. On the other hand, the recollection of counsel for appellant appears not to be in entire accord with this contention, for he asserts in his printed brief that the district attorney read the principal parts of the testimony in the presence and hearing of the jury, and commented on it in his argument to the jury. In the circumstances, we are compelled to consider the assignments of error in the light of the bill of exceptions exclusively.

This shows that, after the district attorney had proved by the official stenographer the correctness of the transcript of the appellant's testimony, he formally offered it "to be read to the jury," it being marked exhibit No. 2, and that the objection to the offer was overruled. The fair interpretation of the bill of exceptions is that the transcript was admitted in evidence. The record does not show that it was subsequently withdrawn or struck out. It was part of the commonwealth's evidence in chief which the appellant had to meet in the presentation of his testimony. For, even though it had not been actually read to the jury at the time the commonwealth rested, there was nothing to prevent it being referred to and commented on in the final argument. This condition of the record of the evidence had to be taken into consideration by the defendant in the presentation of his defense, and, for aught we know, may have influenced his course therein. We, therefore, conclude that the assignments cannot be overruled upon the ground that the testimony he gave in the Martin case was not used against him in the trial of his own case.

In general, proof of his voluntary admissions of relevant facts is competent against a person charged with a crime, and ordinarily such proof is not rendered incompetent by the mere fact that the voluntary admissions were made in the course of his testimony as a witness in another case: Williams v. Com., 29 Pa. 102; Com. v. Doughty, 139 Pa. 383; Com. v. House, 6 Pa. Superior Ct. 92; Com. v. Ensign, 40 Pa. Superior Ct. 157; 12 Cyc. of Law and Procedure, 474, 480. This still remains the general rule notwithstanding the section of the constitution under consideration. The question is whether this case is taken out of the general rule by that section. The first essential to an affirmative answer to that question is that the charge against the accused in the case in which the former testimony was given was bribery, corrupt solicitation or practice of solicitation, and it was suggested in the oral argument that this does not appear in the record. The

record furnishes very slight evidence of that essential, it is true, although we do find in the caption to the stenographer's transcript as printed in the appellant's paperbook, the following: "Testimony of Charles R. Richardson, defendant in this case, given in the case of Com. v. William A. Martin (bribery) at No. 586, Dec. Sessions, 1906," etc. It could be argued with much force that the best evidence of the nature of the charge in the Martin case would be the indictment itself. But in view of the foregoing reference to the charge in the caption of the transcript we are not disposed to put our decision upon the ground that it does not appear with technical certainty that the testimony was given in one of the classes of cases specified in sec. 32, art. 3; particularly, as the words, "offense of bribery" employed in that section have been construed to mean all bribery, whether bribery at common law or under the constitution itself, or any kind of statutory bribery (Com. v. Bell, 145 Pa. 374), and as it is virtually conceded by counsel for the commonwealth in his history of the case that the indictment against Martin was for accepting a bribe as councilman.

The next question to be considered is, whether the mere fact that testimony was given by a witness in a judicial proceeding against a person charged with the offense of bribery is a conclusive bar against the use of that testimony against the witness in a subsequent judicial proceeding against him. After deliberate consideration of the wording of the constitutional provision, in the light of the mischief to be remedied and the object to be accomplished by it, we are of opinion that it is not. To be more explicit, to prevent the use of the testimony afterwards in a judicial proceeding against the witness, it must have been given under some sort of compulsion. The words are not "any testimony" that a witness may give in such a proceeding shall not be used against him, but "such testimony." It is argued with much force that the purpose of the constitutional provision was not

to compel testimony of a noncriminating character or tendency—for that could always be done—but to compel testimony that might conceivably criminate or tend to criminate, and that the words "such testimony" properly may and should be construed to relate to that kind of testimony; further that to prevent the use of the testimony afterwards against the witness his claim of the privilege to withhold it must have been made and overruled by the judge. Be that as it may, we think there can be no escape from the conclusion that the words "such testimony" relate to testimony that has been compelled.

The remaining inquiry is, whether the testimony given by the witness in the Martin case was of that character. As in the consideration of the question as to the use that was made of the testimony we have felt constrained to confine our attention strictly to what the record shows, so we feel constrained to do in the consideration of the present question. The argument of appellant's counsel is based, to some extent, on the assumption that the appellant appeared and testified in the Martin case in obedience to a subpœna. It is argued that this brings the case within the principle of People v. Sharp, 107 N. Y. 427. The commonwealth's counsel does not concede this fact, and insists that it does not appear anywhere in the record. It is true the opinion of the learned judge overruling the motion in arrest of judgment assumes it to be a fact, but it is important to notice that he did not try the Martin case in which the evidence was given. A careful examination of the record, including the official report of the evidence given on the trial of the appellant as well as the transcript of the testimony given by him in the Martin case fails to show that he appeared and testified in that case in obedience to a subpœna, or under the compulsion of threats or any compulsion whatever. Again, the transcript of the evidence he gave fails to show that he demurred to answering any question that was put to him upon the ground that the answer might criminate

him or upon any ground whatever. It gives no indica-
tion, and there is no extraneous evidence tending to show,
that he did not testify freely and voluntarily, or that he
became a witness under compulsion of law or of legal
process. The extraneous evidence as to his willingness to
testify in the various proceedings against Martin grow-
ing out of this same transaction tends to rebut any in-
ference that he was compelled to testify in the bribery
case. But apart from this consideration, we conclude
from the testimony relating exclusively to the circum-
stances under which he testified in the trial of the indict-
ment against Martin above referred to, that the case is
not excepted from the general rule above stated by sec. 32,
art. III, of the constitution.

The judgment is affirmed and the record is remitted
to the court of quarter sessions of Allegheny county with
direction that the judgment be fully carried into effect,
and to that end it is ordered that the defendant forthwith
appear in that court and that he be by that court com-
mitted to serve and comply with such part of his sen-
tence as had not been performed at the time this appeal
was made a supersedeas.

*Error assigned* was the judgment of Superior Court.

*Clarence Burleigh,* for appellant, cited: U. S. v. Armour
& Co., 142 Fed. Repr. 808; Counselman v. Hitchcock,
142 U. S. 547.

*Warren I. Seymour,* for appellee.—"Such testimony".
within the provisions of art. III, sec. 32 of the constitu-
tion of Pennsylvania refers to testimony given under com-
pulsion: U. S. v. Kinball, 117 Fed. Repr. 156; Horstman
v. Kaufman, 97 Pa. 147.

The word "such" refers to incriminating testimony:
Kelly's Election, 200 Pa. 430; Com. v. Gibbons, 9 Pa.
Superior Ct. 527; Com. v. Bell, 145 Pa. 374; State v.
Murphy, 128 Wis. 201.

Per Curiam, January 3, 1911:

The judgment is affirmed on the opinion of the learned president of the Superior Court.