The State v. Backstrom.

---

No. 25,701.

The State of Kansas, *Appellant and Appellee,* v. John Backstrom, *Appellee and Appellant.*

SYLLABUS BY THE COURT.

Liquor Law—*Evidence Given Without Objection at Inquisition Held by County Attorney—Competent Against the Witness When Prosecuted.* One who testifies without objection at an inquisition held by a county attorney under the prohibitory liquor law may thereafter be prosecuted for any violation of that law concerning which he testifies.

Appeal from Trego district court; Jacob C. Ruppenthal, judge. Opinion filed November 8, 1924. Affirmed in part and reversed in part.

*Charles B. Griffith,* attorney-general, and *W. H. Wagner,* county attorney, for the plaintiff.

*R. D. Armstrong* and *D. B. Long,* both of Scott City, for the defendant.

The opinion of the court was delivered by

Marshall, J.: In an information filed in the district court of Trego county the defendant was charged, in three counts, with three violations of the prohibitory liquor law: in the first count, with having in his possession intoxicating liquor; in the second, with unlawfully transporting intoxicating liquor in Trego county; and in the third, with having failed to inform the county attorney of Trego county concerning violations of the prohibitory liquor law which had come to the knowledge of the defendant, he being a constable of one of the townships of that county. This case was numbered 2,207 in the district court of Trego county.

The defendant filed a motion to quash each count of the information, which motion was denied as to the first and second counts and sustained as to the third count, which was dismissed by the court without prejudice. Plaintiff thereupon filed another and sep-, arate information, charging the defendant with the offense contained in the third count of the first information. This case was numbered 2,217 in the district court of Trego county. The defendant then filed pleas in abatement against the charges contained in the two informations. A demurrer to each plea was overruled. The plaintiff then answered, denying generally the allegations of each plea. The pleas were tried together to a jury, and special questions were answered. On the answers to those questions the court sustained the plea as to the first and second counts of the first information and overruled the plea as to the last information. From the order sustaining the plea in abatement to the first and second counts of the first information the plaintiff appeals, and from the order overruling the plea in abatement as to the last information the defendant appeals.

The evidence introduced on the trial of the pleas tended to show that the defendant was a constable of one of the townships in Trego county; that he with others purchased intoxicating liquor in that county from another person who was engaged in the manufacture of such liquor; that the liquor was transported to another place in the county; that he did not report his knowledge of those violations of the law to the county attorney; that at an inquisition held by the county attorney of Trego county in conjunction with the county attorney of Ness county, the defendant, without being subpœnaed and without otherwise being compelled to testify, was sworn and testified concerning the purchase and transportation of the intoxicating liquor. There was evidence which tended to show that the county attorney had promised not to prosecute the defendant for any violation of law that might be disclosed by his testimony. There was also evidence which tended to show that the defendant voluntarily testified at the inquisition. Among the special questions were those numbered 1, 2, 3 and 6, which were answered by the jury as follows:

"1. Did W. H. Wagner, as county attorney, on January 30, 1924, hold an inquisition relating to violations of the prohibitory liquor law under section 62-301, Revised Statutes of 1923? A. Yes.

"2. Did the defendant, John Backstrom, testify as a witness in such inquisition? A. Yes.

The State v. Backstrom.

"3. Did the testimony of John Backstrom in such inquisition concern the transaction, matters or things now charged as crimes against him in: (a) Count 1 in case 2,207? A. Yes. (b) Count 2 in case 2,207? A. Yes. (c) Case 2,217? A. Yes, but not fully.

"6. Was the defendant, John Backstrom, promised immunity from prosecution before making the inquisition affidavit or statement exhibit 1? A. No."

There was no other verdict. Nowhere does it appear that the defendant objected to testifying before the county attorney.

The defendant contends that he cannot now be prosecuted for any violation of the prohibitory liquor law concerning which he testified at the inquisition. The plaintiff argues that the defendant was not compelled to testify and that his testimony was voluntarily given.

The last sentence of section 62-301 of the Revised Statutes reads:

"No person shall be excused from testifying in any proceeding as above provided on the ground that his testimony may incriminate him; but no person shall be prosecuted or punished on account of any transaction or matter or thing concerning which he shall be compelled to testify, nor shall such testimony be used against him in any prosecution for any crime or misdemeanor under the laws of this state."

Was the defendant compelled to testify within the meaning of this statute so as to render him immune from prosecution for any offense concerning which he testified? An inquisition before a county attorney is very similar to an inquiry by a grand jury.

In a note in 27 A. L. R. 139-154, this language is found on page 149:

"If a witness, at the time he was required to appear before the grand jury, was not charged with a crime, an indictment found against him has been held not to be invalid on the ground that he gave incriminating testimony against himself without being advised as to his right to refuse to give such testimony."

And again on the same page is found the following:

"The witness may not be compelled to give incriminating testimony before the grand jury, but, having done so without objection, he will be deemed to have waived his constitutional privilege, and to have testified voluntarily."

In 40 Cyc. 2547 the following language is used:

"In order to be available the privilege must be claimed by the witness, and accordingly no objection lies to a question on the ground that it calls for incriminating matter; nor should the court exclude a question for such reason where the witness does not object to answering."

On this subject 4 Wigmore on Evidence, 2d ed., p. 958, says:

"There must be a *claim of privilege*. The reason is that the anticipatory

8—117 Kan.

legislative pardon or immunity is not authorized absolutely, but only conditionally upon and in exchange for the relinquishment of the privilege. The legislature did not intend to give something for nothing, *i. e.*, to give immunity merely in exchange for a testimonial disclosure which it could in any event have got by ordinary rules or by the witness' failure to insist on his privilege. The immunity was intended to be given solely as the means of overcoming the obstacle of the privilege; and therefore (irrespective of the precise formality of the judge's procedure) could not come into effect until that obstacle was explicitly presented and thus needed to be overcome."

In *State v. Comer*, 157 Ind. 611, 613, the court said:

"Being subpœnaed, and appearing before the grand jury and being sworn, was not a violation of appellee's constitutional rights, and while before the grand jury he could be compelled to testify to any matter which did not criminate him. Under the provision of the constitution of this state above quoted, he could not, however, be compelled to testify before the grand jury to any matter that would criminate him. Whether he should so testify was, therefore, a personal privilege which he could claim or not as he chose. If he gave such criminating evidence voluntarily his constitutional rights were not violated. It is a general rule that when a personal privilege exists for a witness to testify or not as he chooses, if he does testify without objection he will be deemed to have done so voluntarily."

In *State v. Duncan*, 78 Vt. 364, the court said:

"When a witness has the personal privilege to testify or not as he chooses, and he testifies without objection, he will be deemed to have done so voluntarily." (Syl.)

An able discussion of this question is found in *U. S. v. Kimball*, 117 Fed. 156, 163, where this language is found:

"What is compulsion? Compulsion is the antithesis of willingness. The provision means that no person shall be forced to be a witness against himself against his free will. This does not mean that he may not be a witness against himself; otherwise an accomplice could not testify. It does not mean that any person may not be called and sworn (barring persons under known legal disability). It is an exception that leaves all persons competent to be witnesses, subject to a call to testify, but enables any of such persons to exempt himself from the whole class by pleading that certain evidence which he is called upon to give will tend to show that he has committed an offense. Hence those competent and free-willed to do so may give evidence against the whole world, themselves included; but those unwilling may not be coerced if it appear that the unwillingness arises from incriminating evidence which they are asked to give. But willingness or unwillingness is subjective, and may be known alone by act, conduct, speech, or perhaps, in extreme cases, by condition. Unless the witness exhibit his unwillingness in some manner it cannot be presumed to exist. This is especially true if his conduct be that of a man untrammeled, if he be free from bodily restraint or physical duress, unterrified by menace, and uninfluenced by cajolery or fraud. Presumptively the person summoned belongs to the general body of citizens, competent to testify, and

The State v. Backstrom.

so he may be considered. If he elect to be excepted from this class he must speak, or his condition or relation to the proceeding must speak for him; for exemptions are allowed only to those who ask for them. Nor is this statement the less true because, as will later appear, he should have a fair opportunity to speak. From this it follows that in a legal sense the doctrine of waiver has no application. The constitution intends that a person shall not give incriminating evidence under compulsion. Immunity from compulsion is the right reserved. This is a qualification of a general duty to testify. It implies that all competent witnesses shall testify when duly summoned to do so, under the usual rules and limitations provided by law, but not against themselves by compulsion. The right of not being compelled, in its very nature, does not admit of waiver. Compulsion and consent—i. e., waiver—cannot coexist. Conversely, compulsion can only exist when there is something to be overcome, as, for instance, refusal, objection, or an unwillingness of which the jury is apprised. Hence that refusal, objection or unwillingness must affirmatively appear before compulsion is possible, and it has already been shown that it cannot appear from his speaking, until the witness has been sworn."

For further discussion of this question see *People v. Bundy*, 168 Cal. 777, 781; *State v. Kent*, 5 N. D. 516; *State v. Ekanger*, 8 N. D. 559, 562; *People v. Willis*, 52 N. Y. Supp. 808; and *Druggist Cases*, 85 Tenn. 449.

In *State v. Taylor*, 36 Kan. 329, 13 Pac. 550, it was held' that it was not error to admit the testimony of a defendant taken at a coroner's inquest, reduced to writing, and signed by the defendant, because it did not appear that the testimony at the coroner's inquest was not voluntarily given. In discussing this question the court said:

"The question whether the court below erred or not in permitting this testimony to be introduced depends entirely upon the question whether it was voluntarily given before the coroner's inquest or not. It was admitted in evidence under that rule of evidence which permits a party's own admissions or confessions, his own declarations, to be introduced in evidence against him; and if it was voluntarily given before the coroner's inquest no error was committed in receiving it on the trial; but if it was given under duress, if the defendant was compelled by subpœna or otherwise to disclose it before the coroner's inquest, then of course the court below should not have permitted it to be introduced on the trial. Now from anything appearing in the record we think the testimony was voluntary. There does not appear to have been any subpœna issued. Nor does it appear that any other kind of compulsion was used.' Nor does it appear that any questions were asked the defendant at the coroner's inquest; but it would seem from the paper containing this testimony that he voluntarily made his own statement, that it was given in narrative form and reduced to writing, and then that he signed the same." (p. 333.)

In *State v. Finch*, 71 Kan. 793, 81 Pac. 494, it was declared that—

"The testimony of a witness subsequently prosecuted for manslaughter, taken at a coroner's inquest in pursuance of a subpœna, where such witness was not at the time under arrest or accused of the crime, and where there is nothing indicating that the testimony was involuntarily given, is admissible against him when he is put upon trial for the commission of the offense.

"Such testimony is not deemed to be involuntary merely because it was given in response to a subpœna." (Syl. ¶¶ 3, 4.)

In *The State v. Harris*, 103 Kan. 347, 175 Pac. 153, the defendant was charged with having burned a barn and its contents in an attempt to defraud an insurance company. He had testified at an inquisition held by the state fire marshal and the county attorney. At the trial he was a witness in his own behalf, and on his cross-examination was compelled to testify concerning his evidence at the inquisition. The court there said:

"A witness subpœnaed to give testimony in a proceeding, who takes the stand and gives testimony without claiming his privilege, waives the right to object to the use of the statements and admissions so made, in a subsequent prosecution, and they are admissible so far as they are relevant to the case, and especially is this so if in the later proceeding he takes the witness stand in his own behalf." (p. 351.)

Under these authorities and the reasoning contained in them it cannot be said that the defendant is immune from prosecution for any violation of the prohibitory liquor law concerning which he testified at the inquisition. In order to render himself immune from prosecution he should have objected to testifying concerning those violations when he was questioned about them at the inquisition. He did not object; he can be prosecuted.

This case is distinguished from *The State v. Sacks*, 116 Kan. 148, 225 Pac. 738. There the defendant was not subpœnaed. He went to the office of the county attorney in obedience to the request of the latter; but when questioned he at first declined to answer on the ground that it might incriminate him. He was told to go ahead, and then answered in obedience to that command.

The plea in abatement to the first and second counts of the information first filed was erroneously sustained. The plea in abatement against the information last filed was correctly denied.

The judgment sustaining the plea in abatement to the first and second counts of the information in case numbered 2,207 is reversed, and the cause is remanded with instructions to the trial court to overrule that plea and proceed with the trial. The judgment of the court overruling the plea in abatement as to the information in case numbered 2,217 is affirmed.