## STATE v. HENRY JAMES WOOD.[1]

December 17, 1926.

No. 25,586.

**Abandonment of infant.**
1. The verdict that defendant had abandoned his infant child is sustained by the evidence.

**When accused may be cross-examined on matter tending to incriminate him.**
2. Where a defendant in a criminal prosecution is a witness in his own behalf, he thereby waives his privilege and may be cross-examined concerning any matters pertinent to the issue even if tending to show the commission of another crime.

**Charge approved.**
3. The charge was fair and clear and contained nothing which could have misled the jury.

Criminal Law, 16 C. J. p. 1049 n. 82; p. 1050 n. 84.
Parent and Child, 29 Cyc. p. 1679 n. 29, 35 New.
Witnesses, 40 Cyc. p. 2553 n. 28.

Defendant appealed from an order of the district court for Olmsted county, Callaghan, J., denying his motion for a new trial. Affirmed.

*M. D. Halloran,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, and *W. W. Smith,* County Attorney, for the state.

[1]Reported in 211 N. W. 305.

TAYLOR, C.

The defendant was convicted of the crime of abandoning his infant child and appeals from an order denying a new trial. He contends that the verdict is not justified by the evidence, and that the court erred in its rulings on the admission of testimony and in its charge to the jury.

The defendant was married in April, 1920, and he and his wife took up their residence on a farm owned by his father in Olmsted county where they resided until January, 1925. Two children were born to them on the farm. Although defendant had the use of the farm without rent, his farming operations seem to have been unprofitable, and in January, 1925, his father sold the farm and agreed to give possession to the purchaser on February 1, 1925. Defendant owed debts amounting to a considerable sum for the larger part of which his father had become responsible. He owned some stock and other personal property which he turned over to his father who sold it and paid the debts, and who will have a small surplus over the amounts so expended when he receives the unpaid balance of the price for which it was sold. In January, 1925, defendant entered the employ of a life insurance company and was located first at Northfield and a little later at Faribault. He went to Northfield in January, leaving his family on the farm, but arranged for them to live with his parents until he found a home for them. They remained on the farm until February 1, 1925, when his father took them to his own home on another farm a few miles from the city of Rochester. His wife's parents lived in that city. In July, 1925, a third child was born at a hospital in Rochester. The hospital expenses were paid by his parents. This is the child whom the information charges that defendant abandoned. After the birth of this child his wife remained with her own parents for some weeks and then returned to his parents. He visited his parents occasionally but gave so little attention to his wife or children that his mother, in a letter to him, characterized his conduct as cruel. Early in July, 1925, he began keeping company with a girl in Faribault, and on the last day of November, 1925, he left Faribault with this

girl and went to eastern Wisconsin where they lived together as husband and wife. On December 18, 1925, his wife taking the youngest child with her went to the home of her parents in Rochester to help in caring for her father who was seriously ill. There she learned that defendant had left Minnesota with another woman and was living with her as his wife in Wisconsin and shortly thereafter caused this prosecution to be instituted.

Outside the making of the arrangement for his family to live with his parents until he could find another home for them, defendant's sole contribution toward their support after he left in January seems to have been the sum of $3 given to his wife's mother on one of his visits. He claims that, because of the arrangement with his parents and of the fact that his parents gave his family a home and were willing to continue to do so, he cannot be held to have failed to support his child. Under the arrangement his wife and children were to remain with his parents until he could find a place for them. No definite length of time was mentioned, but the jury could find from the evidence that all parties understood that they were to remain only while he was finding a dwelling to which he could take them and not later than the following spring. So far as appears he made no attempt to provide a new home for them although urged to do so by his wife and his parents, and was offered a house by his own parents in the village of Oronoco free of rent.

In respect to the arrangement between defendant and his parents, the court instructed the jury to the effect that they were to determine whether this arrangement meant that the parents were to take care of his family for such reasonable time as would be necessary for him to provide a home for them, or were to assume that burden from then on indefinitely; that if his parents continued to support his family voluntarily, of their own good will, without any obligation to do so, it did not relieve him from responsibility; that to relieve him from responsibility they must find that his parents had assumed the obligation of supporting his family indefinitely, or until he returned to provide a home for them. In closing this part of the charge the court said:

"The vital question in this case is: Did he make this arrangement for that wife and those children to stay there indefinitely during the time when he went away, as he admits he did, with this other young woman? Were they being kept at this home and supported under and by virtue of an agreement that he had entered into by and with his parents?—for, as I said to you, what they were willing to do, what they voluntarily did, does not relieve him from responsibility in this case. It was his duty to care for and support this family and to provide for them, and what they did outside of the arrangements that were made he is not entitled to credit for in this case."

No exception was taken to the charge at the trial, but in his motion for a new trial defendant assigns those portions of the charge relating to his arrangement with his parents, above summarized, as error. There may be verbal inaccuracies, but we are satisfied that the charge as a whole presented the issues fairly and in a manner to be clearly understood by the jury, and that the charge and the verdict were justified by the evidence.

The girl who went with defendant to Wisconsin was a witness and testified fully concerning their trip, that they lived together as husband and wife, and among other things testified that a marriage ceremony was performed between them in the state of Illinois. Defendant was a witness in his own behalf, and on direct examination among other things testified that he knew this girl, had taken her about in Faribault and had heard her testimony. He then denied that any marriage ceremony had ever been performed between them, but did not deny that they had gone to Wisconsin together and had lived there as husband and wife. On cross-examination the prosecution was permitted to bring out the fact that he had taken this girl to Wisconsin and lived with her there substantially as she had stated. This testimony was objected to on the ground that it tended to incriminate him and the rulings admitting it are urged as error.

Where a defendant in a criminal prosecution takes the stand as a witness in his own behalf, he thereby waives his privilege and

may be cross-examined concerning any matters pertinent to the issue even if tending to show the commission of another crime. Dun. Pr. § 744; 40 Cyc. 2552, and citations under note 28; 2 Ann. Cas. 247, note and citations. While this court may not have decided the question specifically, it has frequently recognized the above rule. Nat. G. A. Bank v. Lawrence, 77 Minn. 282 (289), 79 N. W. 1016, 80 N. W. 363; State v. Quirk, 101 Minn. 334, 112 N. W. 409; State v. Kight, 106 Minn. 371, 119 N. W. 56; State v. Seeling, 126 Minn. 386, 148 N. W. 458. The reason for the rule is explained by Dean Wigmore in volume 4, section 2276, of his work on evidence. The rulings permitting this cross-examination were correct.

We find no ground for granting a new trial and the order denying it is affirmed.