## STATE v. JOHN E. LOWRIE.[1]

October 26, 1951.

No. 35,343.

---

[1] Reported in 49 N. W. (2d) 631.

*J. A. A. Burnquist*, Attorney General, *Ralph A. Stone*, Assistant Attorney General, and *Robert R. Dunlap*, County Attorney, for the State.

*Lawrence R. Lunde* and *Foley & Foley*, for defendant.

MAGNEY, JUSTICE.

This case comes to the writer by reassignment.

Defendant was indicted by the grand jury of Wabasha county for the crime of attempted bribery. The court made an order denying his motion to quash the indictment and for certain other relief. It reported and certified to this court that certain questions presented to it were deemed so important and doubtful as to require a determination here before further proceedings could be had.

The indictment sets forth that on or about May 15, 1949, defendant requested one Hollie Cliff to call upon the county attorney of Wabasha county to ascertain the amount of money the latter would accept in order to permit defendant to conduct illegal gambling operations in Wabasha county without suppression or prosecution; that subsequently defendant paid Cliff certain sums, with instructions and with the intent that Cliff should deliver such money to the county attorney so that defendant might engage in the illegal operations described without interference; and that Cliff at no time discussed the matter with the county attorney, but retained all sums paid to him for his own use.

In January 1950, defendant, in response to a request from Karl A. Nuerenberg, as acting assistant to the state public examiner, gave testimony under oath covering details of the transaction set out in the indictment. It is not disputed that the investigation, as understood by defendant and by Nuerenberg, related to the official conduct of the county attorney and the sheriff of Wabasha county.

Defendant was not subpoenaed to so testify and was not represented by counsel. He was advised, however, that if he did not tes-

tify papers compelling him to do so would be served upon him. He was then taken to a room in the county jail in Wabasha county for the purpose of the investigation. He was there presented with a waiver of immunity, which, at the request of Nuerenberg, he executed, acknowledged, and delivered to Nuerenberg. It provided:

"I, the undersigned John E. Lowrie, am advised that the Department of Public Examiner, State of Minnesota, is now investigating certain charges involving J. E. L. Extortion.

"I know fully and appreciate my rights under the Constitution and laws of this state. I know: (1) that I am not obliged to and cannot be compelled to be a witness with reference *to said charges* before the Public Examiner or his duly authorized representative, or the grand jury, *or to testify with reference to said matters or charges against me.*

*   *   *   *   *

"(4) Of my right to counsel of my own selection. I have been fully advised of my rights by Karl A. Nuerenberg, Public Accounts Examiner, Department of Public Examiner, State of Minnesota.

*   *   *   *   *

"* * * I agree that anything that I may say or testimony that I may give before said Public Examiner, or his duly authorized representative, at any time may be used by the grand jury, if such a jury is called, to consider *any charges or indictments against me;* and I agree further that anything I may say or testimony that I may give may also be used against me or any other person *in any case, matter, or litigation, criminal or civil, that may hereafter be tried in any court or tribunal.* And I further agree not to object to or attack *any indictment* against me that may be returned by a grand jury on the ground that I testified before said Public Examiner or his duly authorized representative, or that such indictment is based in part upon my testimony." (Italics supplied.)

The testimony of defendant thereafter taken by Nuerenberg was recorded on a soundscriber and subsequently transcribed. No copy thereof was delivered to defendant.

On May 15, 1950, defendant executed an instrument entitled "Withdrawal of Waiver of Immunity," and on the same day served copies thereof upon the judge of the district court, the county attorney, and the foreman of the grand jury, and filed the original with the clerk of the district court of Wabasha county.

On May 18, 1950, the grand jury returned the indictment charging defendant with the crime of attempted bribery. On May 22, 1950, defendant made a motion to quash the indictment. On June 6, 1950, he moved the court for interlocutory orders (1) permitting the taking of oral testimony on the motion to quash the indictment; (2) requiring Karl A. Nuerenberg to appear before the court for the purpose of cross-examination; and (3) striking from the files the affidavit by Nuerenberg which related to defendant's execution of the described waiver of immunity and to his testimony before Nuerenberg.

As indicated, the court on June 15, 1950, made its order denying all of defendant's motions, and at the request of defendant certified the following questions to this court:

"(1) Do the statutes of Minnesota exempt defendant from prosecution for the offense stated in the indictment?

"(2) If so, does public policy prevent a waiver of such exemption?

"(3) If the first question is answered in the affirmative and the second in the negative, may the defendant withdraw his waiver before he is indicted?

"(4) If the first question is answered in the affirmative, and the second and third in the negative, did the defendant waive exemption from prosecution?"

In a well-considered memorandum attached to the order of June 15, 1950, the court sets forth that M. S. A. 215.16 and 215.17, the provisions of the statutes under which defendant claims exemption from prosecution, are restricted to inquiries, examinations, and investigations made by the public examiner in the performance of his official duties; that the public examiner acted outside the scope of his duties when he investigated the alleged attempt to bribe the county attorney; and that consequently defendant was not re-

quired to obey any subpoena, or to answer any question, or to give any information.

M. S. A. 215.01, which specifies the powers and duties of the public examiner, reads as follows:

"The department of the public examiner is hereby created, which shall have the duty and power to supervise all public accounts, to prescribe and install systems of accounts and reports, to inspect all records and transactions connected with the receipt, disbursement, and custody of public funds, to investigate the use and security of all public appropriations and property, to ascertain the sources and condition of the public revenue, investments, loans, and debt, and to verify the public funds and examine and report upon the condition and security thereof."

Section 215.16 provides:

"In all matters relating to his official duties, the public examiner shall have the powers possessed by courts of law to issue subpoenas and cause them to be served and enforced. All state and county auditors, treasurers, and other public officials, and their respective deputies and employees, all officers, directors, and employees of all railway and other companies required by law to pay taxes to the state upon a gross earnings basis, and all persons having dealings with or knowledge of the affairs or methods of such companies, and likewise all corporations, firms, and individuals having business involving the receipt, disbursement, or custody of the public funds shall at all times afford reasonable facilities for such examinations, make such returns and reports to the public examiner as he may require, attend and answer under oath his lawful inquiries, produce and exhibit such books, accounts, documents, and property as he may desire to inspect, and in all things aid him in the performance of his duties."

Section 215.17 makes it a felony to refuse or neglect to obey any lawful direction of the public examiner.

Reading § 215.01, set out above in full, in connection with the facts set out in the indictment, it is apparent that when the exami-

ner took the statement from defendant he was acting outside the scope of his duties. Attempting to bribe the county attorney has nothing to do with "public funds," "public accounts," "public appropriations and property," or "public revenue, investments, loans, and debt." No doubt the public examiner has a duty to investigate bribery charges when those charges grow out of matters which it is his duty to investigate and examine. As stated by the trial court in its memorandum:

"* * * I have been unable to find any statute which makes it the duty of the public examiner to investigate bribery as such."

Since the public examiner was acting outside the scope of his duties when he investigated the alleged attempt to bribe the county attorney, defendant was not required to obey any subpoena, or to answer any question, or give any information. He could not have been compelled to testify. If the examiner had been proceeding within the scope of his duties, the provisions of § 613.16 might apply. But that is not our situation.

The first question presented to us is:

"Do the statutes * * * exempt defendant from prosecution for the offense stated in the indictment?"

Under the facts here, it would seem that the *statutes* do not exempt defendant from prosecution, since the investigation was not within the power of the public examiner. Since our answer to the first question is "No," the other questions by their terms are not submitted to us.

The cause is remanded to the trial court for such further proceedings as are by law required.

So ordered.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the four questions certified to this court should be definitely answered as follows:

■ *Do the statutes exempt defendant from prosecution for the offense stated in the indictment?*

The statutes of Minnesota, in my opinion, exempt defendant from prosecution for the offense stated in the indictment, unless it be held that he has waived such exemption. M. S. A. 613.16 provides:

"Every person offending against any * * * law relating to bribery shall be a competent witness against another so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or *investigation,* in the same manner as any other person; but, if prosecuted or indicted for such bribery, he may plead or prove the giving of such testimony in bar thereto." (Italics supplied.)

Clearly, the term "investigation" as used in the foregoing statute must be held applicable to the proceedings here instituted by the public examiner. Section 215.16 specifically provides that in matters "relating to his official duties, the public examiner *shall have the powers possessed by courts of law to issue subpoenas and cause them to be served and enforced."* (Italics supplied.) Section 215.17 provides:

"Every person who shall refuse or neglect to obey *any lawful direction of the public examiner, or his deputy or any of his assistants;* withhold any information, * * * or other thing called for by him for the purpose of examination; * * * shall be guilty of a felony, * * *." (Italics supplied.)

The duties of the public examiner relate primarily to public accounts and the expenditure of public funds. Section 215.11 provides:

"* * * If any such examination shall disclose malfeasance, misfeasance, or non-feasance in any office of such county, such report shall be filed with the county attorney of the county, and it shall be his duty to institute such civil and criminal proceedings as the law and the protection of the public interests shall require."

An investigation relative to bribery or attempted bribery of a county official certainly would fall within such requirements, since

it relates directly to the integrity of the official involved and his trustworthiness in the expenditure and custody of public funds under his jurisdiction. It is quite possible that bribery of a county official might be directly connected with public funds, property, or accounts, and that a thorough investigation of a bribery report would establish such a connection, while, without it, the relationship between the bribery and the public funds might never be shown. Since § 215.11 requires the public examiner to report to the county attorney evidence of malfeasance, misfeasance, or nonfeasance in public office disclosed by his examination therein, it would seem inconsistent to deny the public examiner the power to investigate a report of bribery which might disclose such malfeasance or misfeasance.

It follows that in the instant case the public examiner was not acting outside of the scope of his powers and duties in investigating the attempt to bribe the county attorney of Wabasha county. In consequence, when defendant was required to testify with reference thereto, he gained the statutory immunity provided by § 613.16.[2]

It is true that defendant was not subpoenaed, but he was informed that if his testimony was not voluntarily given a subpoena would follow. He was requested to proceed with the examiner to the county jail to give his testimony there, a factor which may well have created the impression that he had little choice in the matter. Section 613.16 provides that a witness involved in bribery may be *compelled* to attend and testify in an investigation thereof. Section 215.17 provides that "Every person who shall refuse or neglect to

[2]In State v. Nolan, 231 Minn. 522, 44 N. W. (2d) 66, this court was asked to determine whether § 613.04 and § 610.47 granted immunity to a defendant from prosecution for his perjury accomplished in conjunction with his testimony under compulsion and over objection, before the public examiner under authority granted the latter by virtue of § 215.16. The limit of our determination there was merely that nothing in the aforesaid sections granted defendant immunity from testifying falsely in an examination conducted under § 215.16, even though under § 613.16 he might have been granted immunity from prosecution for matters under consideration in the investigation disclosed by self-incriminating testimony given therein.

obey any lawful direction of the public examiner, * * * shall be guilty of a felony, * * *." Section 215.18 provides that the powers and duties conferred upon the public examiner may be exercised by his assistants, as in the instant case. See, 8 Wigmore, Evidence (3 ed.) § 2282. In State v. Gardner, 88 Minn. 130, 92 N. W. 529, at the request of the assistant county attorney, defendant appeared voluntarily before the grand jury, and it was only after his appearance there that a subpoena was served upon him. His testimony thus obtained was held to bar his subsequent prosecution. The facts present here and the authorities referred to are compelling reasons for removing defendant from a volunteer classification in giving his testimony before the public examiner.

A number of courts have held that the immunity granted in return for required self-incriminating testimony in preliminary proceedings is lost, unless a specific claim of privilege against self-incrimination is made by a defendant in connection with the giving of such testimony.[3] Minnesota, along with certain other courts, appears to have taken the opposite viewpoint on this question.[4] Thus, in State v. Rixon, 180 Minn. 573, 231 N. W. 217, 68 A. L. R. 1501, and State v. Gardner, *supra*, in each of which immunity was upheld, the respective defendants in giving self-incriminating testimony had failed to assert their constitutional rights in connection therewith. In United States v. Monia, 317 U. S. 424, 63 S. Ct. 409, 87 L. ed. 376, which settled conflicting opinions in the federal courts of appeals, a similar conclusion was reached, the basis of the decision being that, since the exempting statute did not specify that

[3]State v. Backstrom, 117 Kan. 111, 230 P. 306; State v. Verecker, 124 Me. 178, 126 A. 827; Ross v. Crane, 291 Mass. 28, 195 N. E. 884; People ex rel. Roach v. Carter, 297 Mich. 577, 298 N. W. 288; Commonwealth v. Richardson, 229 Pa. 609, 79 A. 222; State v. Murphy, 128 Wis. 201, 107 N. W. 470.

[4]United States v. Monia, 317 U. S. 424, 63 S. Ct. 409, 87 L. ed. 376; People v. Fryer, 175 Cal. 785, 167 P. 382; State ex rel. Marshall v. Petteway, 121 Fla. 822, 164 So. 872; Doyle v. Willcockson, 184 Iowa 757, 169 N. W. 241; People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 A. S. R. 851; People v. Seaman, 174 Misc. 792, 21 N. Y. S. (2d) 917.

the claim of privilege against self-incriminating testimony be asserted, the immunity from prosecution granted by such statute was not lost by a defendant's failure to assert such constitutional right.

■ *Does public policy prevent a waiver of such exemption?* Minn. Const. art. 1, § 7, provides:

"No person shall be * * * compelled in any criminal case to be a witness against himself, * * *."

M. S. A. 613.16 and other like statutes were enacted in order that desired evidence otherwise impossible to obtain might be procured, notwithstanding the protective provision of the constitution above set forth. In return therefor, the immunity from prosecution for a crime which such testimony might disclose was granted. The law appears well established that a defendant may waive his constitutional right against self-incriminating testimony. As stated in 8 Wigmore, Evidence (3 ed.) § 2275: "It has never been doubted that the privilege [against self-incrimination] like all privileges * * *, is in itself *waivable.*"[5] As the trial court aptly stated:

"There is no doubt that such constitutional privilege [against self-incrimination] may be waived. The accused may voluntarily confess his crime out of court, or he may plead guilty or testify in court if he so desires. The statutory exemption [from prosecution of persons required to give evidence against themselves] surely has no greater sanctity than the constitutional safeguard."

In State v. Iosue, 220 Minn. 283, 19 N. W. (2d) 735, this court upheld a written waiver of immunity similar in form to that involved in the instant case and extended its operation not only to the investigation then taking place before the grand jury but to subse-

[5]Rogers v. United States, 19 U. S. Law Week 4155; Smith v. United States, 337 U. S. 137, 69 S. Ct. 1000, 93 L. ed. 1264; Johnson v. United States, 318 U. S. 189, 63 S. Ct. 549, 87 L. ed. 704; United States ex rel. Vajtauer v. Commr. of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. ed. 560; Raffel v. United States, 271 U. S. 494, 46 S. Ct. 566, 70 L. ed. 1054; Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. ed. 819; Rottschaefer, Constitutional Law, § 326, p. 805; Note, 30 Col. L. Rev. 1160.

92

quent proceedings in which the cause was resubmitted after a no bill had first been returned. In State v. Wood, 169 Minn. 349, 211 N. W. 305; State v. Mason, 152 Minn. 306, 189 N. W. 452; State v. Klitzke, 46 Minn. 343, 49 N. W. 54; and State v. Nichols, 29 Minn. 357, 13 N. W. 153, a waiver of the constitutional privilege against self-incrimination by voluntary appearance and testimony without objection was recognized as effective. See, 14 Am. Jur., Criminal Law, § 162; 15 Temple L. Q. 169; Rogers v. United States, 19 U. S. Law Week 4155; Raffel v. United States, 271 U. S. 494, 46 S. Ct. 566, 70 L. ed. 1054. Question No. 2, therefore, must be answered in the negative.

■ *May a written waiver of immunity be withdrawn before indictment?*

Diligent search has failed to disclose any previous decisions here on this question. It is true that State v. Iosue, 220 Minn. 283, 19 N. W. (2d) 735, might be construed as recognition of the right to withdraw a written waiver. However, this point was not in issue there, and the language used was in the nature of obiter, not relevant to the specific question certified for determination.

8 Wigmore, Evidence (3 ed.) § 2275, indicates the author's conclusion that a waiver once given may not be retracted. Therein he states:

"May such a waiver be made *irrevocably* by contract before trial? Unless the contract is one which by its circumstances has come within the doctrine of duress or oppression, and is thus voidable on general principles of contract, there is no reason in its present aspect why it should not be *binding*. This has been the doctrine since the origin of the privilege." (Italics supplied.)

It would seem that this reasoning is sound and in accordance with established legal principles applicable to waiver and estoppel in general. 56 Am. Jur., Waiver, § 24, and cases cited. To hold otherwise would result in confusion and uncertainty in the enforcement of our criminal statutes. The conclusion would follow that a written waiver of immunity freely executed, with full knowledge

of constitutional rights, and without duress, fraud, or oppression, cannot thereafter be withdrawn.

■ *Did defendant's actions here constitute a waiver of exemption from prosecution?*

Two factors must be considered on this question: (1) Defendant's execution of the written waiver of immunity, and (2) his actions in appearing and testifying before the public examiner.

Whether either of such factors constituted a binding and effective waiver of defendant's immunity from prosecution involves fact questions. With reference thereto, the record presented consists of the following: (1) The written waiver of immunity signed by defendant; (2) two affidavits of defendant with reference to the execution thereof and his testimony before the public examiner; (3) one affidavit by the examiner setting forth his version of the matter; and (4) excerpts from the testimony of defendant transcribed from the soundscriber.

Defendant's affidavits set forth that the written waiver of immunity was obtained from him by false representations on the part of the examiner; and that such false representations likewise were the inducing cause of his later testimony before such examiner. They set forth his claim that he was advised that the investigation did not relate to any charge of bribery against him, but rather to the conduct of the county attorney and sheriff of Wabasha county and to whether either of them was guilty of the crime of extortion; that he had no attorney and was told by the examiner that, while he had a right to one, an attorney was not necessary, as the investigation merely related to the public officials and to determining whether they had received money to which they were not entitled; that he was led to believe that there was no intent or thought of accusing him of violating any law; that after his arrival at the county jail a written waiver of immunity was submitted to him, and he was informed that its execution was a matter of little significance—that it was just a matter of form; that, based upon such assurances, he executed the same without reading it; that at no time were any of his constitutional rights mentioned, except his

right to see an attorney, after his arrival at the county jail; and that the examiner, by his "gay, friendly, apparently innocent manner and talk inveigled this affiant into signing such Waiver."

The affidavit of the examiner sets forth the following which took place before the signing of the waiver by defendant:

"* * * that said defendant inquired of your affiant what words were to be inserted in the first paragraph [of the waiver] following the words 'to wit.' That your affiant informed the defendant that he believed 'bribery' was correct; that defendant stated that he did not believe it was a bribe but that the matter involved extortion and that he wanted the word 'extortion' inserted and not 'bribery'; that he also objected to the words 'against me' and that the same were deleted and in lieu thereof the word 'involving' was inserted; that said correction was initialed by the defendant in affiant's presence."

The affidavit of defendant states that prior to the signing of the waiver and prior to the giving of his testimony substantial additional conversations between defendant and the examiner took place, which were not recorded on the soundscriber; that after the assurances and changes above described defendant proceeded to testify before the examiner without any attorney being present and without any knowledge on his part that by so doing he was waiving any of his constitutional rights or privileges; that thereafter he did testify truthfully as to all questions asked him, and indicated that he had given certain sums of money to Hollie Cliff for the county attorney on Cliff's assurances that thereby he would be permitted to continue his operations; and that frequently during the testimony conversations took place which were not recorded on the soundscriber.

Defendant's statements are corroborated to a certain extent by the affidavit of the examiner, which sets forth that before taking defendant's testimony he advised defendant that the testimony of various other persons had been taken with reference to an investigation involving the county attorney, the sheriff, and Hollie Cliff,

and that defendant's testimony would be helpful in the same connection. The written waiver of immunity indicates the changes made therein as shown by the affidavit of the examiner quoted above. Otherwise, the affidavits of defendant and the examiner are in sharp conflict.

The examiner's affidavit sets forth that defendant was advised that he was entitled to be represented by an attorney and that he replied that he thought he would not need one; that in order to keep the investigation secret he (the examiner) had arranged for a private office in the county jail for the purpose of taking testimony in the matter; that upon arrival there he presented defendant with a printed form of "Waiver of Immunity" and fully explained to him that unless such a waiver was signed his testimony would not be taken; that defendant stated that the matter involved extortion rather than bribery, and that changes accordingly were made in the printed form.

Excerpts from those parts of defendant's testimony which were submitted by the state indicate that defendant testified that he had no objection to giving his testimony; that he was anxious to tell what was going on; and that he gave such testimony voluntarily and without threats. They disclose that defendant was not represented by counsel. There is no indication *therein* that he was advised of his constitutional rights or that he might retain the services of an attorney. They do not indicate that he was aware that he was the subject of the investigation.

It would seem clear from the foregoing that the trial court should determine whether the facts established that defendant freely and voluntarily waived his immunity granted under § 613.16, or whether the execution of the written waiver and defendant's testimony before the examiner were brought about through misrepresentation, duress, or fraud. In determining this issue, the entire record of the proceedings before the examiner should be submitted, and the examiner's testimony with reference thereto should be taken, subject to cross-examination. It is impossible to determine it solely from the conflicting affidavits now forming part of the record. See, Edwards

v. United States, 312 U. S. 473, 61 S. Ct. 669, 85 L. ed. 957, and State v. Schabert, 218 Minn. 1, 8, 15 N. W. (2d) 585, 588-589. Its final determination may ultimately be dependent upon oral testimony taken as indicated in the Schabert case, *supra.*