## STATE v. MAX MASON.[1]

June 9, 1922.

No. 22,590.

Person called before grand jury can be indicted on the evidence of other persons.

1. The Constitution of this state provides that no person shall be compelled in any criminal case to be a witness against himself. Under this provision a man cannot be compelled to give evidence against himself before a grand jury, but one called before a grand jury investigating a particular crime may be indicted on the evidence of others, so long as he is not compelled to give evidence against himself. No constitutional right of the defendant in this case was impaired.

[1]Reported in 189 N. W. 452.

**Identification of defendant was sufficient.**

2. The identification of defendant as one of those engaged in the commission of a crime charged was sufficient. Identification may be sufficient, though the person making it cannot remember the face of the person identified. Identification based upon other peculiarities may be reasonably sure.

**Evidence of disease admissible in prosecution for rape.**

3. In a prosecution for rape evidence is admissible that the defendant had a venereal disease and that the complainant soon after the alleged commission of the crime contracted the same disease. The evidence in this case as to the time when defendant and complainant had such a disease is sufficient to render it admissible.

**Circumstantial evidence.**

4. In a prosecution for rape, penetration may be proven by circumstantial evidence. The evidence of penetration in this case was sufficient.

Defendant was indicted by the grand jury of St. Louis county charged with the crime of rape, tried in the district court for that county before Nelson, J., and a jury and found guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*F. L. Barnett* and *B. C. McCullough*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, and *Warren E. Greene*, County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of the crime of rape. He appeals from an order denying a motion for a new trial. It appears that on June 14, 1920, Robinson's Circus came to Duluth. The testimony on the part of the state is as follows:

In the evening after dark, a young woman of 19 was about the circus grounds in company with a young high school boy. They mingled in the crowd outside the tents, but after awhile found themselves at a place from which all other spectators had gone. On turning to go

themselves, they were suddenly confronted by five or six negroes attached to the circus, who blocked their path. One placed a gun at the young man's head and threatened to shoot if he spoke. Another seized the young woman and placed his hand over her mouth. Both were forced to go to a ravine about a block away. The young woman there became unconscious and all of the negroes save one ravished her. She became conscious as this last one was assaulting her. Both were then released and were directed to go in a direction opposite from the circus. The young man escorted the young woman to her home and then went to work at night employment at which he was engaged, but soon sought out his father and told him the story. The families of both young people immediately took the matter up and reported the facts to the police. A number of negroes attached to the circus were arrested on suspicion and on the following morning were brought before the young people. Naturally both were very much excited. They could identify none of them. Later and about the middle of July, they made the identification of defendant and one other. This identification will be referred to hereafter in more detail. Defendant and others were indicted. While the investigation was going on and two days after the crime was committed, there came the lamentable occurrence of a frenzied crowd taking the law into their own hands. No violence was done to this defendant.

1. Defendant moved to quash the indictment on the ground that he had been called before the grand jury that returned the indictment against him and was there compelled to testify against himself. The trial court denied the motion.

The Constitution of the state very explicitly provides that "no person  *  *  *  shall be compelled in any criminal case to be a witness against himself." Article 1, § 7. The language is unequivocal. Nothing can be detracted from it; nothing added to it. It forbids that a man be compelled to give evidence against himself before a grand jury as well as in court. State v. Froiseth, 16 Minn 260 (296); State v. Gardner, 88 Minn. 130, 92 N. W. 529. He cannot be compelled to give evidence as to any facts tending to accuse himself of crime or to prove any link in the chain of testimony which is

necessary to convict him of a crime. 3 Wigmore, Evid. § 2260; State v. Gardner, supra. The constitutional provision does not, however, prohibit receiving a man's evidence even against himself if he is not compelled to give it, and it does not prohibit his being compelled to give testimony against another, even though he may be charged with or suspected of the same crime; nor does it prohibit the state from calling before a grand jury one suspected of a crime under investigation, so long as he is not compelled to give evidence against himself, Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127, and there is nothing in the Constitution which prohibits the grand jury before which he is so called and examined from indicting him on the evidence of others. The Constitution makers had no purpose to tie the hands of the state so that it may not investigate intelligently the authorship of crime.

Bearing these principles in mind the disposition of this question is simple. The motion to quash was heard on conflicting affidavits. Those presented by the state aver that defendant was called in the course of a general investigation of the facts concerning the crime against the young woman with no particular charge against any one, that he was not compelled to give evidence against himself, but was distinctly told that he was not asked to do so. From the affidavits presented, the trial judge might find these to be the facts. On this state of facts we have no hesitation in saying the defendant's constitutional rights were not impaired.

2. It is said the identification of defendant was not sufficient. The jury might have so found. But they found it sufficient and the evidence justifies this finding. When defendant was first brought before them, neither the young man nor the young woman identified him. Later both of them did so. A number of negroes were taken to the scene of the crime on evenings when the light was about the same as it was when the crime was committed. There they were brought before the young man and the young woman separately, and each, acting independently, picked out defendant as one of the guilty men. Both said they identified defendant, not from his face, but from his size, his general appearance, his talk and his walk. If but one had identified defendant in this manner the evidence might

properly be considered weak, but when both, acting independently, picked out defendant, the testimony became much stronger. Identification may be sufficient though the person making it cannot remember the face. Identification based upon other peculiarities may be reasonably sure.

3. These further facts are important. Dr. Nicholson gave evidence that he examined defendant about the middle of July, and defendant then had a venereal disease which he had probably had as much as a month before and that defendant admitted to him that he had the disease and that he had received no attention since he had been up there. He examined the other negroes who were accused and none were diseased. Dr. Coventry testified that on July 10 the young woman was suffering from the same disease and that the disease manifests itself from two to ten days after contact. She testified that she first noticed evidence of the disease ten days or two weeks after June 14. On cross-examination she impaired the force of this statement as to time. She testified, however, that she had never had intercourse with any other man. It seems clear without comment that this testimony taken all together made out a chain of circumstantial evidence corroborative of the testimony of the young man and woman. See 33 Cyc. 1476; People v. Glover, 71 Mich. 303, 38 N. W. 874.

Defendant contends that it was error to receive this line of testimony. He admits that it "probably was of controlling influence with the jury." This admission in itself goes far toward determining its admissibility for the courts should be slow to exclude, in a lawsuit, classes of evidence which are precisely the considerations that would influence men of affairs in deciding a business proposition. Connected as the facts are, we are of the opinion that the testimony was all clearly admissible.

4. Defendant contends that no crime was proven because no one testified to the fact of penetration. The complaining witness was unconscious at the time of the assault and it is said the young man, who was a few feet away, did not give explicit proof on this point. The contention is not sustained. There is abundant evidence of assault with the purpose of committing rape. Penetration, like any

other fact, may be proved by circumstantial evidence. People v. Scouten, 130 Mich. 620, 90 N. W. 332; Taylor v. State, 111 Ind. 279, 12 N. E. 400. It is often necessary to so prove it. Usually the only persons present are defendant and complainant. It would be unthinkable to hold that, because the criminal renders his victim unconscious, no proof can be made of the crime. The proof in this case is sufficient. There is the evidence of the young man which for all practical purposes is direct proof. There is the proof of ensuing disease, and there is proof of numerous slightly corroborative circumstances. The evidence of a physician who examined complainant that he could not say there had been penetration is not conclusive that penetration had not taken place. The doctor himself made that clear.

We find no error in the record and the order appealed from is affirmed.

DIBELL, J. (dissenting.)

The story upon which the conviction rests is a strange one. The young man and woman separated themselves from two other boys and girls. They wandered about. They, like others, watched the animals as they were taken from the menagerie. Suddenly they were alone. They were attacked by six negroes, taken unobserved by anyone to a secluded spot a block away, and the girl was assaulted by the six successively, and ravished, as the opinion says, by five, the last two of the six quarreling over the right of precedence. One negro held a gun pointed at the young man. He was quiet throughout.

Continuing the story it is proper to note that the young man and woman, when released and told not to return to the show grounds, walked a few blocks to the Merritt school-house, sat there on the steps talking for a few minutes, walked back to the Grand avenue car line, took a car and rode west ten blocks, and then walked two or three blocks to the young woman's home. They sat on the porch for a while talking. The father was in the house reading. The mother had retired. The young man then left, took the street car home, going past the show grounds, and thence to the docks and

to work. The young woman went upstairs, passing her father with the remark: "I am going to bed," stopped at her mother's room, saying: "Mamma, I met Jimmie tonight and we went to the circus," received the kindly response: "All right, dear, go to bed now," went to her room, then to the bathroom, and then to bed and to sleep. She made no complaint. "While the rule requiring immediate complaint is not inflexible, yet the unexplained failure to do so is a very important fact. It is so natural as to be almost inevitable that a female upon whom the crime has been committed will make immediate complaint, if she have a mother or other confidential friend to whom she can make it. The rule is founded upon the laws of human nature." State v. Connelly, 57 Minn. 482, 59 N. W. 479.

Some time between 1 and 2 she was awakened by her mother, and later went to the Canadian Northern yards to identify the negroes. The family physician called at 10. He knew the occasion of his call. He had the sympathy attendant upon the relation of family physician and patient. He "found a normal condition," though "she seemed slightly nervous; the physical condition was good." His examination was thorough. There were no abrasions nor bruises nor inflammation nor evidence of soreness or tenderness. He did not call again. Some of the best evidence of a crime, if there was one of this kind, was not preserved. State v. Cowing, 99 Minn. 123, 134, 108 N. W. 851, 9 Ann. Cas. 566. There is other testimony that the girl was "very hysterical and nervous" for several days. So were other Duluth people in the days following June 14. Mason denied that he was guilty, claimed that he was at work, and was corroborated by some of his negro fellow-workers. There is perhaps a possibility that six negroes committed the crime just as charged. Convictions are not rested on possibilities. The story in its entirety is unusual and strikingly improbable.

Now pass to the identification. Mason was brought before the young man and woman at the yards about 5 in the morning of June 15. They did not identify him. There is testimony that the girl shook her head when Mason was presented. He was discharged and went to Virginia with the show. The boy and girl assumed to identify some, partially at least, and they and the officers selected

from 100 or 120 negroes following the show 13 as likely suspects. They were taken to the city jail. Seven were released before noon. That left 6. Three were hung that night. That left 3. The 3 who escaped hanging were spirited to Superior and brought to the county jail the next day. Ten were brought down from Virginia later, Max Mason among them, and taken to the county jail, so there were 13 in the jail for the grand jury.

It is common knowledge that colored men are not easily distinguished in daytime and less readily in the dark or in the twilight. Young southern negroes, such as these, look much alike to the northerner. The proof is in the case.

Mason and 9 others were arrested at Virginia on the fifteenth. Two officers who were active in the work of identification at the yards in the morning went there and apprehended them. They started to Duluth by auto with 4 of them. They were stopped a few miles back of Duluth because of the lynching in progress, and the negroes were kept overnight in a nearby house. One of these officers, on the witness stand with Mason before him, was not quite sure that he was one of the 4, but said: "I believe he was." Mason was not one of the 4. He was brought down by train the next day and taken to the county jail. The other officer, on the witness-stand, with Mason before him, stated with positiveness that he was one of the 13 taken from the cars on the morning of the fifteenth, was one of the 6 kept in jail, that he gave his name as Green, and that he was one of the 3 not hung. He says that Mason denied that he had offended and "cried in the police station." These officers were trained by their calling to observe closely and identify men. They were honest. They helped round up the 10 negroes at Virginia, rejecting 2 or 3. They were in the auto with 4 of them. One thought Mason was along. The other was positive that he was one of the 6 who were taken to the police station, and so was never in Virginia. Mason concededly was never in the auto, nor in the police station, never was accused of anything there, never denied anything there, and never cried there. Both officers were mistaken, each in a different way. They were unable to distinguish from others the negro who had been in jail for 5 months charged with this crime.

What of the identification by the young man and woman? The grand jury was in session—had been in session for a long while. They had been before it. It was time for an identification. The young man and woman and the officers had some natural interest in making an identification. The identification of a guilty negro was rightly enough to their liking. The boy and girl assumed to identify Mason and Miller—one short, one tall or slim. On their testimony if one was guilty the other was. What they said at the time was incompetent. There was no objection. Their evidence is not impressive. It must be read from the settled case for the paper book is abbreviated. The assumed identification was something like a month after June 14. Some distracting things had happened since. Their recollection of the black men was no more trustworthy than that of the officers. To my mind the evidence is legally insufficient upon which to rest an identification sustaining a conviction.

That the girl was diseased on July 10, and Mason on July 19, is not of much weight as an identifying circumstance. The state's physician says that infection would follow in from 2 to 10 days after contact. The girl says she first noticed it in 10 days or 2 weeks. She again says that she first noticed it 3 days before the doctor came. She had not told her mother. The doctor was not called by the family. He was sent by the prosecution. The date of the examination, July 10, does not seem disputed. There was a lapse of 26 days between the contact alleged and the examination. She either did not notice infection for 23 days, or had it for 10 to 16 days without mentioning it. Perhaps there is an explanation, though none is offered. But this aside, about all that can be said is that the condition of Mason was consistent with guilt, if a crime was committed. It was not inconsistent with his innocence. A like condition in any other man in Duluth that night, white or black, on or off the show grounds, was consistent with his guilt of this crime. Likewise it was not inconsistent with his innocence. Identification was first necessary and the disease did not identify. If the state had found the ones who participated in the assault, one only being infected, and infection followed, there would be proof that he accomplished

the more serious crime. On the state's theory there were four or five other contemporaneous sources of infection. There was no elimination. As the proof is it is not forceful. Nor is the chance statement made by Mason's counsel in his brief in support of his objection to the testimony on constitutional and other grounds—an objection which he had a right to make—an admission against the defendant of its materiality or importance. That it furnishes the basis for an argument which might mislead is evident. Care was necessary to avoid being misled by a specious argument.

It was not for Mason to show what occurred at the show grounds and who participated. To my mind it is only a chance guess that he was connected with any offense at the show grounds. It is a less likely guess that he was an actor in a crime such as is charged. In my view the evidence does not sustain the conviction.