## STATE v. CHARLES SHANSY.[1]

June 19, 1925.

No. 24,769.

**Conviction of murder of bank officer sustained.**

1. The evidence sustains the jury's finding that the defendant was one of four jointly concerned in the robbery of a bank, in the accomplishment of which an officer of the bank was killed, and that he was guilty of murder.

**In criminal case accused must make his objections when evidence is offered.**

2. To avail himself of errors in the reception of evidence the defendant in a criminal case must object.

**New trial unnecessary because prosecutor offered incompetent evidence without objection.**

3. There was no misconduct of counsel for the state, requiring a new trial, in offering incompetent testimony to which no objection was made.

**New trial unnecessary because of cross-examination of accused.**

4. The testimony of the defendant on cross-examination about being taken to police headquarters on one occasion, with the auto which

[1]Reported in 204 N. W. 467.

he was driving, and the finding of a gun and tools therein, was not such as to require a new trial; nor was the testimony of an officer to the same incident.

1. See Homicide, 30 C. J. p. 302, § 548.
2. See Criminal Law, 17 C. J. p. 56, § 3331; Homicide, 30 C. J. p. 437, § 690.
3. See Criminal Law, 16b C, J. p. 1141, § 2641.
4. See Criminal Law, 16 C. J. p. 1146, § 2643.

Defendant with others was indicted by the grand jury of Ramsey county charged with the crime of murder in the first degree, tried separately before Michael, J., and a jury, and found guilty as charged in the indictment.   Defendant appealed.   Affirmed.

E. S. Cary, for appellant.

Clifford L. Hilton, Attorney General, James E. Markham, Deputy Attorney General, Harry H. Peterson, County Attorney, and Charles L. Hayes, Assistant County Attorney, for respondent.

DIBELL, J.

The defendant, Charles Shansy, was indicted with Hurley, Samec and Lindberg for murder in the first degree.   On his separate trial he was convicted.   He appeals from the judgment of conviction.

1.   For the purposes of this appeal it may be taken as established that on January 20, 1923, at 9:30 in the morning the Payne Avenue State Bank in St. Paul was robbed by Hurley, Samec and Lindberg; and that someone, claimed by the state to be the defendant, was the driver of the auto and assisted by taking the three men there, and the two survivors away, all four acting in concert in the robbery as joint participants.   In the course of the robbery a police officer, stationed in the bank to guard it, shot and killed Hurley. Samec shot and killed the cashier, Chester A. Eklund.

For killing Eklund the defendants were indicted.

The important question is whether the evidence sufficiently identifies the defendant Shansy as the man who drove the auto, a Paige sedan stolen in Minneapolis the night before from the general vicinity of Hurley's home.   Shansy was in the taxi business in Minne-

apolis from February to December, 1922. From then on, except for a short while at Christmas, he was doing nothing. He was acquainted with Hurley, who had been a whiskey runner, but seems to have abandoned the business, temporarily at least, about midsummer of 1922. He visited him at his home in Minneapolis in October, and again on the Thursday night preceding the robbery. There was a talk of some minutes between the two out of the hearing of Hurley's wife. At this time Hurley, so Shansy says, wanted to get his auto to use in selling alcohol. Shansy met Hurley again, he claims accidentally, on the afternoon of Friday, the day before the robbery, and they lunched together. Hurley and Samec were together many times, and Samec was frequently at Hurley's home.

Samec arranged with Lindberg to take part in the robbery. He was to be the outside guard and Hurley and Samec were to do the inside work. On the morning of the Saturday Lindberg was picked up in St. Paul by the auto which contained Hurley and Samec and the driver and they proceeded to the bank. After the robbery Samec and Lindberg got into the auto. It was driven away and abandoned. The three men got out and went their ways.

Lindberg testified for the state. He does not identify Shansy. Nor does he say that Shansy was not the driver. One might infer from reading his testimony that he was stupid and dull, or dazed by the outcome of their venture.

Six or seven witnesses identify Shansy. Some of them are very certain; others less so. So far as the record discloses they were trustworthy people engaged in honorable vocations. Witnesses for the state, like witnesses for the defendant, often become partisan. The weight of their testimony was for the jury. The presence of the stolen Paige sedan at the place of robbery about which there seems no question, was a factor in the identification. About an equal number, perhaps two or three more, testified that Shansy was at the family home in Minneapolis all of the forenoon of Saturday. Some were interested and naturally partisan. The weight of their testimony was for the jury. The identification and the alibi were for the jury. See State v. Pugliese, 149 Minn. 126, 182 N. W. 958; State v. Lilja, 155 Minn. 251, 193 N. W. 178; State v. McTague, 158

Minn. 516, 197 N. W. 962; State v. Daly, 161 Minn. 26, 200 N. W. 746. Shansy was a witness and denied all connection with the crime. His connection with Hurley was unfortunate. He stood in need of a good life history; but his associates and his manner of life were not good. The evidence sustains the verdict.

2. Evidence which would have been excluded if objection had been made was received without objection. Our rule is that the defendant in a criminal case must make his objections—that he may not take chances on the result and if it is against him except. State v. McCarthy, 159 Minn. 48, 197 N. W. 961; State v. Sailor, 130 Minn. 84, 153 N. W. 271. There might be a case where we would grant a new trial where improper evidence was received though there was no objection. See State v. Rutledge, 142 Minn. 117, 171 N. W. 275. It would be an exceptional one.

Some of the evidence received without objection was hearsay. The reception of hearsay, over objection, as said in Delaney v. United States, 263 U. S. 586, 44 Sup. Ct. 206, 68 L. ed. 462, may involve the deprivation of a constitutional right; but here there was no objection. The ordinary rule applies.

3. Nor do we find that there was misconduct of counsel, which should result in a new trial, in offering incompetent evidence. The defendant could have objected and taken a ruling. Then an attempt to continue might have constituted misconduct. See State v. Johnson, 114 Minn. 493, 131 N. W. 629; State v. Taylor, 144 Minn. 377, 175 N. W. 615; State v. Morgan, 146 Minn. 197, 178 N. W. 489; State v. Nelson, 148 Minn. 285, 181 N. W. 850. We do not approve of all of the county attorney's examination. Some of it was unfair.

4. The testimony of the defendant on cross-examination, after he had gone somewhat into his life history, about being taken on one occasion to police headquarters in Minneapolis, with the auto which he was driving, and the testimony of an officer in rebuttal about the same incident, the claim being that a gun and burglar tools were found in the car, are not of much significance. Objection was made to some of this testimony. At the most it was but an incident in the trial. Though the testimony might have been excluded, its reception should not work a new trial.

The issues were submitted by the court with entire fairness. There was no exception to the charge. The facts were in direct dispute, they were found by the jury against the defendant, and the verdict should stand.

Judgment affirmed.