# STATE v. UDKA KLASHTORNI, ALIAS L. M. KLASS.[1]

May 3, 1929.

No. 27,213.

*Wright, Nelson & Plunkett, Hopp & Larson* and *Don V. Hinrichs,* for appellant.

*G. A. Youngquist,* Attorney General, *Walter F. Wieland,* Assistant Attorney General, and *A. D. Gray, Jr.* County Attorney, for the state.

[1] Reported in 225 N. W. 278.

DIBELL, J.

The defendant and three others were indicted by the grand jury of Fillmore county for the crime of robbery in the first degree. Upon trial the defendant was convicted, and he appeals from the order denying his motion for a new trial.

■ On May 7, 1928, about two o'clock in the afternoon, the First National Bank of Spring Valley was robbed by four men. It is claimed that the defendant was one of them. He is identified positively by Hamlin, the president of the bank, and Gilbert, the vice president.

The defendant denied that he participated in the robbery and claimed that he was in the Twin Cities at the time. His claim was supported by 12 witnesses. Naturally enough they were his friends or relatives or business associates. Their testimony as to the date was corroborated. For instance, the lady where he roomed claimed that she marked on a 1928 calendar under the date of May 7 the fact that on that day he paid his rent. The calendar is in evidence. One Gimble owed the defendant. He procured a check for $700 payable to cash, and it was given by the defendant to the Shaw Grain Company with which the latter did business. It was deposited to the credit of Shaw on May 7. The defendant was given credit for $650 and $50 was given to Gimble. From this circumstance Gimble and several connected with the grain company fixed May 7 as a day when he was at the office of the company. Another, who was secretary of his church, was drawing checks for bills on May 7, when the defendant was at his house. Checks of that import are in evidence and by them, in part at least, the witness fixes the date. One witness kept a diary of his whereabouts and claimed by the use of it to be able to fix May 7 as a day when he met the defendant. Several sale slips of the Shaw Grain Company show sales of large amounts of corn sugar on May 7, and it is claimed they represent purchases by the defendant. These and other memoranda had probative value.

The defendant if a participant was in the lobby of the bank, evidently a lookout. The officers of the bank had but a limited view

of him. Some might think that his features would be impressed upon them so definitely that they would never forget and would not be mistaken; others might think that the opportunity to identify was such that they easily might be mistaken. The next day they identified the defendant from photographs taken in 1924 when he was convicted in the federal court in Iowa of having in his possession intoxicating liquor. And when he came to the county seat some days after the robbery they identified him upon personal view. It was peculiarly for the jury to determine the accuracy of their identification.

The identification by the bank officers was sufficient to justify the jury's finding that the defendant was a participant in the robbery. State v. Suey, 164 Minn. 497, 205 N. W. 449; State v. Shansy, 164 Minn. 10, 204 N. W. 467; State v. Daly, 161 Minn. 26, 200 N. W. 746; State v. Lilja, 155 Minn. 251, 193 N. W. 178; State v. Eckelberry, 153 Minn. 494, 191 N. W. 256; State v. Mason, 152 Minn. 306, 189 N. W. 452; 2 Dunnell, Minn. Dig. (2 ed.) § 2468d. It was much stronger than that held sufficient in State v. Mason, 152 Minn. 306, 189 N. W. 452.

If the defendant was innocent, about all the proof that he could offer was his own testimony that he did not participate in the robbery and that he was elsewhere. His alibi was not an independent or affirmative defense. The evidence which he offered was not such as to prevent a finding that he participated in the robbery. Its weight was for the jury. State v. Pugliese, 149 Minn. 126, 182 N. W. 958; State v. Daly, 161 Minn. 26, 200 N. W. 746; State v. Shansy, 164 Minn. 10, 204 N. W. 467; 2 Dunnell, Minn. Dig. (2 ed.) § 2448. It was entitled to fair consideration. It was in some respects forceful, and it was subject to some infirmities.

The question of the guilt of the defendant was for the jury, upon whom the first responsibility rested. The issue was submitted upon a fair charge to which no exception was taken. When the motion for a new trial was made a large measure of responsibility rested upon the trial judge, for if the evidence was not sufficient its duty was to grant a new trial. In a memorandum attached carefully

reviewing the evidence, the court states its views and is of the positive opinion that so far as concerns the sufficiency of the evidence the verdict should not be disturbed. The court appreciated its responsibility. It is not for us to interfere with it upon that ground, and we sustain its holding.

■ The evidence made a clear-cut issue upon the identification of the defendant which was the only issue in the case. The defendant was entitled to have it presented to the jurors without diverting their attention or prejudicing them by showing or suggesting other crimes.

Defendant's first witness was his brother Harry Klass. He lived in Chicago. He testified that he was in Minneapolis on May 7, 1928, with his brother. His testimony was at times wandering in character, and he did not always answer responsively. He returned to Chicago. In the latter part of the month he went to Sioux City, Iowa. There he heard through a garage man that his brother was wanted for the robbery of the Spring Valley bank. He drove to Minneapolis and told the defendant. It is in evidence that the defendant sent an attorney to investigate, and that when he found that he was wanted he went to the county seat and surrendered. Upon cross-examination the state immediately proceeded to inquire of Harry relative to a sale of $10,000 in liberty bonds at the Kenwood National Bank in Chicago on August 26, 1927. He was in St. Paul on August 25, and from there went to Chicago with the defendant, who took the bonds with him. They were sold at the Kenwood National. His explanation was that he wanted to buy a garage business and the defendant was helping him. The cross-examination, so the state claims, was directed to an effort to show that the defendant went under the name of "Joe." Why this was of consequence does not appear. It appeared from the redirect testimony of Harry that a claim was made that the bonds were stolen. No claim of such kind was made on the direct case of the state.

Without giving the details of the evidence it is enough to say that it was assumed in the testimony that a bank at Vinton, Iowa,

was robbed on August 19, 1927, and bonds stolen. There was no proof of it and there could be none; and there was no proof of defendant's connection with a robbery or stolen bonds and there could be none. The affidavit of the Iowa sheriff made in support of defendant's motion for a new trial upon the ground of newly discovered evidence, which motion will not be considered further since insufficient to require a new trial, is to the effect that none of the eyewitnesses to the Vinton robbery, some of whom had come to Minnesota to identify the defendant, was able to do so. The defendant was asked where he was on August 19, 1927. The sheriff from Vinton was in the court room during the trial and was pointed out. He interviewed the defendant after his arrest. The Iowa officers told him or some one in his presence that the bonds were stolen from the Vinton bank. The defendant claimed that he bought the bonds sold in Chicago from a St. Paul broker. Throughout the effort of the state was persistent in suggesting or insinuating that the defendant had some connection with the robbery of the bank, and that the bonds which he took to Chicago were bonds stolen from the bank and that he had guilty knowledge thereof. There was no proof, it is true; but the assumption that there was a robbery of the bank and a theft of bonds and the suggestion that the defendant was connected therewith were before the jury in a forceful way. The questioning was not in an offensive or disagreeable manner, but the suggestion and insinuation were repeatedly made. A considerable part of the defendant's testimony on cross-examination, page after page, was directed to the Vinton bank and the stolen bonds. The robbery of the Vinton bank and the sale of the bonds in Chicago were in August, 1927. The robbery of the Spring Valley bank was on May 7, 1928. The robbery of the Vinton bank and the sale of the bonds in Chicago had nothing to do with the identity of the robbers at Spring Valley. Evidence of the character stated diverted the attention of the jury from the real issue and put before it the suspicion that the defendant was connected with the robbery of the bank, or the disposition of the stolen bonds, or both, and was necessarily prejudicial. Proof that he was con-

cerned with either was not admissible, and the continued insinuations cast were damaging and wrongfully made. State v. Clark, 114 Minn. 342, 131 N. W. 369; State v. Nelson, 148 Minn. 285, 181 N. W. 850, and cases cited.

The defendant was engaged, so he testified, in the brokerage business. He dealt in "sugar, malt, molasses, and yeast," the sugar mostly corn sugar. He kept one or more trucks and delivered what he sold usually through his truck driver. His business was extensive. He knew his customers, except one, only by their first names. Of course there could be no question in the minds of the jurors but that he was connected with the illegal manufacture or traffic in liquor. His wife testified so in substance. Objection is made that the state showed the nature of his business, not merely on his cross-examination but by independent proof before he became a witness.

The defendant was on the stand in his own defense and was properly subject to a searching cross-examination. He could not choose to remain a stranger to the jury, which was entitled to know something of his history. The jurors had the right to know something of the kind of a man they had before them. Practically every witness called for the defense was asked on cross-examination, before the defendant became a witness, whether he knew the nature of his business and was cross-examined at length. He had been convicted in 1924 in Iowa in the United States court for having in his possession 850 gallons of intoxicating liquor. It was proper to show on cross-examination his conviction as affecting his credibility.

The fact that the defendant was engaged in his so-called brokerage business in the illegal traffic in intoxicating liquor was unduly stressed. He was not on trial for that. A considerable portion of the record is devoted to it. We are not in sympathy with the conduct of the state in putting before the jury in such detail an issue not for trial. It diverted the jury's attention from the real issue. Of itself it probably would not call for a new trial.

The constant insinuation that the defendant was connected with the Vinton robbery on August 19, 1927, and that the bonds which he sold a few days later were the proceeds of that robbery, was

wrong and was harmful. The testimony invited the jury to find that the defendant, engaged in the unlawful traffic in intoxicating liquor, was guilty of the Spring Valley robbery, and it was made easier to find so because of the insinuation that he had participated in the robbery of the Vinton bank six months before or was selling stolen bonds with guilty knowledge. This was a distinct and emphasized feature of the trial. Its tendency to prejudice the jury in the determination of the only issue in the case was such that there should be a new trial.

Order reversed.

STONE and HILTON, JJ.
We dissent.