## STATE v. ARLEY FARMER.[1]

March 14, 1930.

No. 27,762.

H. E. Narey and Karl L. Rudow, for appellant.

Henry N. Benson, Attorney General, and B. E. Grottum, County Attorney, for the state.

HILTON, J.

Defendant appeals from an order denying his motion for a new trial.

[1]Reported in 229 N. W. 789.

Defendant was convicted of the crime of assault in the first degree. In brief the information charged that defendant on March 29, 1928, committed the assault when he was armed with a loaded firearm by discharging said firearm against D. P. Brady with the intent to kill said Brady. Brady was a game warden. He and defendant knew each other, the former having about four years before the time of the shooting arrested defendant for violating the game laws. For that offense defendant pleaded guilty and paid a fine. From other evidence it appeared that defendant was acquainted with Brady.

On the night in question Brady in the discharge of his duties went to the township of Minneota in Jackson county, Minnesota, to visit Rush Lake, near which defendant lived and which had a large ditch leading into it. Brady left his car some distance away and proceeded toward the ditch. It was a place frequented by violators of the fish laws. As he came within about 300 feet of the ditch Brady saw a light and four men standing close together. Just what they were engaged in doing he could not tell at that distance. As he approached nearer three of the men ran away and the other dropped down alongside the ditch bank. When Brady had advanced to within ten feet of where this man had dropped to the ground the latter arose and fire three shots at him, two of which took effect in his right arm. The assailant then fled in the direction taken by the other three men. The evidence is undisputed as to Brady's being shot at the time, in the manner, and at the place stated. That same night he returned to his home at Windom, Minnesota, where he had his wounds cared for by his physician. Brady testified that it was a moonlight night (about 11 o'clock) and that he could easily see the man who did the shooting. He said the man wore a cap, brown hunting coat and hip rubber boots. He thus described generally the man's wearing apparel but not in minute detail. He was not asked on direct or cross-examination further to describe the man, his features, size or otherwise. He heard his assailant's voice but could not understand what he said. Brady found a trammel fish net at the place where the men had been stand-

ing and took it with him. It was afterwards introduced in evidence.

Defendant denied that he did the shooting, disclaimed all knowledge of the affair, and produced evidence to establish an alibi. His witnesses were his wife, her father and mother, and the hired man, all of whom lived in the same house as did defendant. The issue was clearly drawn and presented a square question of fact for the jury.

■ Defendant's contentions are that the verdict was contrary to law and not justified by the evidence; that it was contrary to the instructions of the court and that errors of law occurred at the trial. These claimed errors include the admission in evidence of the net above referred to.

Much stress is laid on the proposition that the identification of defendant by Brady was not sufficient. During his examination he stated that when the shots were fired he took his assailant "for Farmer"; that he "thought it was Farmer"; that he "recognized him as Farmer"; that he "knew it was Farmer"; and other like statements. He testified several times that he was positive that his assailant was the defendant. As to sufficiency of identification see State v. Mason, 152 Minn. 306, 189 N. W. 452; State v. Tom Suey, 164 Minn. 497, 205 N. W. 449; 2 Dunnell, Minn. Dig. (2 ed.) § 2468d, and cases cited.

The rule is well stated in 16 C. J. 548. "The identification by the witness need not be positive and certain; it is enough for him to testify that his belief, opinion, impression, or judgment is that accused is the person whom he saw commit the crime. The indefiniteness and uncertainty affect the weight rather than the admissibility of the testimony."

The question of sufficient identification was for the jury, as was also the credibility of the witness and the weight to be given his testimony. The same is true as to the alibi evidence. State v. Shansy, 164 Minn. 10, 204 N. W. 467. The verdict of the jury had the approval of the trial court. It should stand. 1 Dunnell, Minn. Dig. (2 ed.) § 415.

There were other circumstances that undoubtedly had weight with the jury. The morning after the shooting Brady had an assistant report the affair to the proper officials of the county. The delay in arresting defendant was for the reason that an attempt was being made to locate the other three men. There was testimony to the effect that defendant made threatening remarks to Brady immediately after the payment by him of the fine for his first offense before referred to. Shortly after the shooting and before his arrest defendant was in the court house at the county seat of Jackson county. He engaged in a conversation concerning the shooting with Svoboda, deputy county auditor. Svoboda testified that Farmer told him that "Brady don't want to come sneaking around there at night because it would be unhealthy for him." To much the same effect was the testimony of county auditor Buckeye. He testified that Farmer said: "Brady had better stay away from the lake down there because it wouldn't be good for him because he was going to get in trouble if he didn't."

There was no prejudicial error in the admission of the net in evidence. It was found at the exact spot where the men were congregated and where the shooting took place. It was an instrumentality commonly used in catching fish in such waters. It tended to characterize the illegal conduct of the four men and to afford a reason for hostility toward a game warden.

■ Errors are assigned as to the giving of certain instructions to the jury as well as the failure to give necessary instructions (no specific requests were made for instructions). At the close of the charge the court inquired as to whether there were any omissions, inaccuracies, or misstatements. None were suggested by counsel. No exceptions were taken to the charge at the time.

Defendant recognizes the rule in Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754, relative to the necessity of calling the trial court's attention to defects of certain kinds in the charge obviously due to inadvertence and that upon failure so to do objection cannot be raised therefor on motion for a new trial or on appeal. The rule applies in criminal cases. State v. Kaufmann, 172 Minn. 139, 214

N. W. 785. He however claims, correctly, that the rule does not apply to an omission of appropriate instructions on a controlling principle in the case. Wilcox Trux, Inc. v. Rosenberger, 156 Minn. 487, 195 N. W. 489. A careful examination of the charge does not disclose any such failure to charge. The charge was fair and impartial; it properly submitted all necessary matters for the jury's determination. The crime charged, as defined by the statute, was clearly explained. The information was read to the jury. The presumption of defendant's innocence was dwelt on, as was the fact that such presumption remained with him throughout the trial until it was overcome by evidence which convinced the jury of his guilt beyond a reasonable doubt. The claims of the state and of the defendant were stated to the jury, and it was told that the state must so prove every essential ingredient and allegation in the information. Further details of the charge need not be given. We have carefully and painstakingly considered all the assignments of error and find no ground for reversal.

Affirmed.