STATE v. UDKA KLASHTORNI, ALIAS L. M. KLASS.[1]

No. 27,901.

August 29, 1930.

*Wright, Nelson & Plunkett, Hopp & Larson,* and *McMeekin & Quinn,* for appellant.

[1]Reported in 232 N. W. 111, 787.

*Henry N. Benson,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *A. D. Gray, Jr.* County Attorney, for the state.

UPON REARGUMENT.

*Martin Nelson, Hugh Plunkett, John W. Hopp, Henry A. Larson, Don V. Hinrichs, George W. Peterson, A. B. Jackson, Jr. James D. Swan, Thomas J. Quinn,* and *T. W. McMeekin,* for appellant.

*Henry N. Benson,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *A. D. Gray, Jr.* County Attorney, for the state.

HOLT, J.

The defendant was convicted of the crime of robbery in the first degree. He appeals from the order denying his motion for a new trial.

The general statement of the facts may be found on a former appeal where a new trial was granted, 177 Minn. 363, 225 N. W. 278. There was a robbery of the First National Bank of Spring Valley on May 7, 1928. The important question was that of the identity of the defendant as one of the four men who participated. The evidence was held sufficient. A new trial was granted upon the ground that the state was in substance trying the defendant for a bank robbery committed in Iowa and the use of bonds which were the proceeds of the robbery, and overemphasizing the disreputable liquor business in which he was engaged so much as to becloud the issue upon the charge of robbery.

The evidence as to identification, which we may consider as including the question of alibi, is much the same as at the first trial, and we need not repeat it. On this trial there is the additional testimony of one Dixon. He was a stove and range supply and repair man, living at Marshalltown, Iowa, and worked northern Iowa and southern Minnesota. He testifies that on May 8, about seven o'clock, he parked his auto in the tourist camp at Albert Lea, which is in the general vicinity of Spring Valley. He slept in his auto. About 11 o'clock two men drove in and camped near his auto.

He assumes to identify one of them as defendant. They talked about Spring Valley and said something about its being a good place. They had some paper money in their possession. A physician of Minneapolis testifies that the defendant came to his office for an examination on May 8, 1928, pursuant to an appointment made that day; that he took his temperature at six p. m; and that the examination took him one-half to three-quarters of an hour. The defendant was a former service man, and the physician made examinations in connection with the verterans hospital. The state seems to concede that the doctor took the examination on that day about as he' said and claims that still the defendant might have been at Albert Lea at 11 o'clock as claimed by Dixon. The doctor's testimony would affect Dixon's testimony but not the testimony of others tending to show the defendant's guilt. The effect of the testimony was for the jury.

The testimony of the bank officers is substantially as at the first trial, and the defendant's alibi for the night of the seventh is not much different though perhaps strengthened by some additions as well as by some omissions. The trial court suggests that both the state's case and the defendant's case were strengthened somewhat on the second trial. We hold, as we did on the first appeal, that the evidence sustains a finding that the defendant was a participant in the robbery.

■ The motion for a new trial on the ground of newly discovered evidence is based on the affidavit of Lyle Hamlin, the president of the bank. He and the vice president, Gilbert, together with Dixon and Brown, were the principal witnesses of the state testifying as to identification. Probably we may say that Gilbert and Hamlin gave the principal testimony supporting identification at both trials.

This appears from Hamlin's testimony when queried at the second trial about the identity of the defendant:

Q. "State whether you are positive that this defendant here in court, L. M. Klass, is the same man you saw in the bank the day it was robbed?

A. "Just as positive as anybody can be under such circumstances."

On cross-examination he said:

"I think the statement that I am as positive as any person can be under such circumstances covers what I mean."

After the trial Hamlin came to have some misgivings. On November 8, 1929, he made an affidavit, which is the basis of the defendant's motion for a new trial on the ground of newly discovered evidence. It follows:

"State of Minnesota, }
"County of Hennepin. } ss.

"Lyle Hamlin, being first duly sworn on oath, deposes and says that he is now and was on the 7th day of May, 1928, the president of the First National Bank of Spring Valley, Minnesota.

"That said bank was robbed on the 7th day of May, 1928.

"That shortly after said robbery, one LaChapelle of the Burns Detective Agency, representing the American Bankers Association in the investigation of said robbery, showed affiant and Mr. C. A. Gilbert, the vice president of said bank, a number of photographs for the purpose of attempting to identify the men who participated in said robbery. That after affiant and Mr. Gilbert had selected the defendant Klass' photograph from among the photographs shown them as aforesaid, both affiant and Mr. Gilbert asked Mr. LaChapelle if, in his opinion, this man (the defendant Klass) might be suspected of being connected with this kind of a deal (a bank robbery). That Mr. LaChapelle replied in the affirmative, and related to affiant and Mr. Gilbert in detail the defendant Klass' alleged connection with the robbery of a bank at Vinton, Iowa, in August of the previous year.

"Affiant further deposes and says that during the last trial of the defendant, in June, 1929, and after affiant had given his testimony in said trial identifying the defendant, a Mr. Gordon, the chief of the Burns Detective Agency, told affiant that he, Gordon, very

much doubted the connection of the defendant Klass with the Spring Valley robbery.

"That this statement, together with previous developments, as hereinbefore outlined, disturbed affiant considerably, and shortly after the trial affiant was on the point of communicating with the attorney general's office, but upon further reflection affiant concluded he would await further developments.

"That since that time affiant has on his own account given considerable study to the probability or rather possibility of an error in identification made under such circumstances; that affiant has spent some time in places like the Radisson Hotel, in Minneapolis, which are frequented by the Jewish people, making a study of identification; that this study has not resulted in lessening the disturbed feeling which Mr. Gordon's statement created in affiant's mind.

"That affiant has prior hereto communicated directly with both Mr. Gurnee, the assistant attorney general, who tried the case on the part of the State, and with Mr. Nelson, one of the defendant's attorneys, voluntarily and of his own motion, concerning the doubt affiant now entertains regarding the guilt of this defendant. That subsequent thereto, affiant also voluntarily, by letter, communicated these facts to the trial court.

"Affiant further states that by reason of the facts aforesaid and the feeling which he now entertains in the matter, if he were called as a witness in another trial of the defendant in connection with this case, he would be very reluctant to identify the defendant as one of the robbers of the Spring Valley bank.

"Lyle Hamlin."

So far as appears, and we take it to be the fact, Hamlin made the affidavit without any communication with the defendant or his attorneys except as he met Mr. Nelson and the assistant attorney general at Albert Lea. It is fair to assume that the language was his own. He is a lawyer. From the affidavits offered in behalf of the state it appears that on October 3, 1929, the attorneys for the state consulted about certain statements that Hamlin had made to

one of the defendant's attorneys. The representative of the state suggested that any statements which he desired to make should not be communicated to the judge, as was Hamlin's first thought, but presented in the regular way on a motion for a new trial on the ground of newly discovered evidence. Mr. Hamlin said that he had expected there would be an acquittal or disagreement on the first trial, and when the second trial was had in June, 1929, he was again of that opinion. He did not deny that he was as certain as one could be "under such circumstances" and would so testify. He told about the statement of Gordon, the representative of the Burns Detective Agency, who expressed considerable doubt of defendant's guilt. He was told by the assistant attorney general that Gordon had discussed the matter with him and had told him that he had interviewed a bank robber known by the name of Frank Devers, also known as "Bubbling Over" Devers, at Memphis, Tennessee, shortly after the arrest of Devers; that Devers had been on a protracted spree and after his arrest had told Gordon a great many things and asserted that he, Devers, had participated in the Spring Valley robbery and that the defendant was not present. Gordon said that shortly after this statement was made Devers was taken to the federal penitentiary at Leavenworth to serve a long term and had the unexpired portion of a life term awaiting him in the state prison in Utah from the penitentiary of which he had escaped. The assistant attorney general asked Gordon whether it was not a fact that criminals about to enter prison for a long term did not frequently claim to have committed other crimes, in order to secure an immunity for someone else, and that Gordon admitted this to be true and told him that after Devers' recovery from the effect of his dissipation and after being imprisoned at Leavenworth retracted his former statement and claimed that he had not participated in the Spring Valley bank robbery and knew nothing about it. All this was communicated to Hamlin. Hamlin said that he had received a call from some official at St. Paul who suggested that he carefully consider the matter of his identification and determine whether a mistake had not been made. Hamlin stated to the state's representatives that his testimony could not truthfully be substantially

different from that which he had given on the two previous trials.

The affidavit of the assistant attorney general among other things states:

"The substance of the interview with Mr. Hamlin was that he still maintained that his testimony given at each of the trials was true; that he had felt some doubt about the correctness of the verdict ever since the first trial, but for some unexplainable reason had never communicated this to the attorneys for the state, and if called as a witness at another trial his testimony would not and could not truthfully be substantially different than that which he had given on the two previous trials."

The above sufficiently shows the general nature of the alleged newly discovered evidence. No doubt the witness Hamlin is conscientious. His identification of defendant on the former trials became qualified on cross-examination. His testimony on another trial, were one had, would be no different in substance on that subject than it was on those already had, except that the affidavit above set out could be used by defendant to indicate to a jury more plainly than before the "reluctance" of the witness to identify defendant as one of the robbers. This can hardly be classed as newly discovered evidence. It is not a case where a witness has changed his testimony, or where he has become convinced that he made a mistake in the former testimony, but rather a case where, after talking with others, the witness has become less certain of that which in his former testimony he would not assert with assurance. Were this witness the mainstay of the identification or the witness who had the best opportunity to identify defendant there might be more basis for a new trial. But here the vice president of the bank, Mr. Gilbert, who was face to face with defendant when struck and forced to lie down, never wavered in his identification. There was also other testimony connecting defendant with the crime. But aside from this, the granting of a new trial on the ground of newly discovered evidence rests with the trial court, whose action is not to be reversed except for abuse of judicial discretion. 5 Dunnell, Minn. Dig. (2 ed.) § 7123, et seq. There are no distinctly unusual

circumstances to question the sound judgment of the learned trial court so as to make applicable Geisler v. Geisler, 160 Minn. 463, 200 N. W. 742. Nor is the situation here like it was in State v. Myers, 154 Minn. 242, 191 N. W. 597, where the main witness for the state, jointly indicted with the appellant, and pleading guilty, after trial made affidavit that his testimony regarding the appellant's participation in the crime was wholly false.

The order is affirmed.

WILSON, C. J. and DIBELL, J. (dissenting).

We dissent upon the ground that before a conviction the jury should have the testimony of Hamlin with the force he now gives it. The two important identifying witnesses are Gilbert and Hamlin. Brown testified as to occurrences at the bank the afternoon of the robbery, but he does not identify the defendant nor does he identify any of the photographs at hand as that of Klass. Dixon's opportunity for identification was not favorable. It may be that the defendant left Spring Valley on the afternoon of May 7, when the robbery was committed, and went north, made an appointment with a physician and had an examination between six and seven o'clock in the evening of May 8, and afterwards drove to Albert Lea, in the vicinity of Spring Valley, parked his auto there at 11 o'clock, talked with someone who was with him about Spring Valley being a good place, and displayed paper money, and that Dixon from his not too favorable viewpoint identified the defendant. His testimony was for the jury, and we do not belittle it. He told in the community freely what he saw but made no effective impression prior to the second trial. It may be noted that when first accused Klass returned to Spring Valley and the county seat.

The question is whether the testimony of Hamlin is so different that in fairness a new trial should be had. The facts are very completely and fairly stated in the opinion of Mr. Justice Holt and need not be repeated. Hamlin testified:

Q. "State whether you are positive that this defendant here in court, L. M. Klass, is the same man you saw in the bank the day it was robbed.

A. "Just as positive as anybody can be under such circumstances."

And on cross-examination he said:

"I think the statement that I am as positive as any person can be under such circumstances covers what I mean."

If it is supposed that Hamlin if called as a witness on a new trial will repeat the words which he used on the former trial he will in addition tell the jury that after making a special investigation and giving renewed consideration he is "very reluctant to identify the defendant as one of the robbers of the Spring Valley bank." He may repeat the words of the former trial; he will tell the jury something different.

The defendant was a stranger to the community. The two bankers who identified him were long residents there with the prestige coming from honorable lives lived. The state can afford to be fair and let the question of defendant's guilt go to the jury with the testimony of Hamlin as he now wants to put it without the fear of a miscarriage of justice. The difficulty in the effective enforcement of the criminal law is the apprehension of the guilty one more than his conviction if apprehended and prosecuted before the court on legal evidence. The case was never a strong one for the state.

### AFTER REARGUMENT.

On November 14, 1930, the following opinion was filed:

PER CURIAM.

A rehearing was granted in this case. Now after a full hearing of the arguments of counsel and a re-examination of the record a majority of the court reach the conclusion that the former opinion filed herein on August 29, 1930, should stand, and the order of the court below remains affirmed.

WILSON, C. J. and DIBELL, J. (dissenting).

We think that there should be a new trial and therefore dissent.

Gilbert and Hamlin were the strongest identifying witnesses. Their testimony had incidental support, but they were the two strong men. With either of them definitely wavering, the state's case is perceptibly weaker.

The defendant's alibi testimony—and in such a case as this a defendant has substantially no affirmative defense except his alibi— is strong. That of the general freight agent of the Omaha and of the garage man is particularly so, supported as it is directly or indirectly by written memoranda. Some of the testimony comes from those connected with the defendant's intoxicating liquor activities and is more readily questioned. After a reconsideration of all the evidence and noting the clearly conscientious change of view of Hamlin, giving the defendant a new trial seems only fair.

