## STATE v. WALLACE W. SUTTON.

138 N. W. (2d) 46.

November 12, 1965—No. 39,727.

*Robert W. Beedle,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Henry W. Pickett, Jr.,* Assistant County Attorney, for respondent.

ROGOSHESKE, JUSTICE.

Defendant, aged 20, was convicted by a jury of uttering a forged prescription for a narcotic drug. He rests his appeal from the judgment solely on the claim that the evidence was insufficient to identify him as the person who committed the offense charged.

The information charged defendant with uttering a forged prescription for a narcotic drug to Abe Orenstein, a registered pharmacist, on January 13, 1964, in violation of Minn. St. 618.18 of the Uniform Narcotic Drug Act.

There is no dispute in the record that the offense charged took place in the afternoon of January 13, 1964, at the Snyder Drug Store, 409 Robert Street, St. Paul, Minnesota, and that a prescription introduced in evidence bearing that date for 4 milligrams of dilaudid, an opium derivative, containing a fictitious name and address in St. Paul and purportedly signed by a Minneapolis physician was a forgery. Further, that a young man, seeking to have the prescription filled for his mother, presented the forged prescription to Mr. Orenstein in the presence of Mrs. Ruby Kaplan, also on duty as a pharmacist at the store. The disputed issue raised by the testimony was whether defendant is the person who committed the offense.

Mr. Orenstein testified that he became suspicious when he saw the prescription was by a Minneapolis doctor. He inquired "why a Saint Paul patient would want to go way over to Minneapolis to get a Dilaudid prescription," to which the young man replied that his "mother was a patient of this doctor for many years." On the pretense of filling the prescription,

Mr. Orenstein ascertained from the telephone directory that the name and address were fictitious. While he was thus engaged, the person disappeared from the store. Mr. Orenstein stated that he could not make a "definite, positive identification" but that defendant "very much" resembled the person presenting it. He similarly identified defendant both at the police lineup and at the preliminary hearing.

Mrs. Kaplan also expressed the opinion that the defendant "resembles the person that brought in the prescription." The state called three other pharmacists employed by three different drugstores in the downtown St. Paul area who gave identification testimony. One identified defendant both at the police lineup and at trial as the person who presented a dilaudid prescription to him on the afternoon of the same day as the offense charged. He testified, "I positively identified him before and I do so today. I'm sure that that is the individual." Another had a prescription, very similar to the one forming the basis for the charge and also received in evidence, presented to him on January 9, 1964. He testified that, while he could not positively identify the person, defendant "resembles him very much." The third pharmacist was asked to fill a prescription on January 16, 1964, for the same quantity of dilaudid and purportedly signed by the same Minneapolis doctor. He identified the defendant, and on cross-examination stated that "he resembles him quite a deal," but conceded that he could not identify defendant "without hesitation * * * for the simple reason * * * he cut off a lot of his hair." Although the foundation evidence was not detailed, the identifying witnesses seemed to base their opinions on defendant's profile, red hair, and eyeglasses.

The state's witnesses were contradicted only by defendant's denial of ever being present in any of the drugstores mentioned, his denial on cross-examination that he ever had used dilaudid, his further explanation that he was visiting his sister's home in Minneapolis during the entire afternoon of January 13, 1964, and his sister's testimony supporting the time and duration of his visit. He argues that the lack of positive identification does not meet the requirement of proof beyond a reasonable doubt.

The law is clear. Opinion evidence is admissible as proof that an accused is the person who committed the offense. State v. Farmer, 179

Minn. 516, 229 N. W. 789. Evidence of other crimes closely connected in point of time and manner of commission is also admissible to establish identity. State v. Bock, 229 Minn. 449, 39 N. W. (2d) 887. The identification testimony of a witness need not be positive and certain; "it is enough for him to testify that his belief, opinion, impression, or judgment is that accused is the person whom he saw commit the crime. The indefiniteness and uncertainty affect the weight rather than the admissibility of the testimony." State v. Farmer, 179 Minn. 516, 518, 229 N. W. 789, 790.[1]

Five witnesses identified defendant. The two eyewitnesses' testimony was corroborated by the other three witnesses, one identifying defendant positively. No attempt was made to exclude the opinions expressed upon the claim that their opportunity to observe defendant was insufficient. The time lapse between the date of the crime and the identification of defendant by two witnesses at the police lineup was significantly short. The witnesses were extensively cross-examined. Thus, the believability and persuasive force of the identification testimony, as well as the defense evidence in the nature of an alibi, was for the jury.[2] Applying well-settled rules, we are not persuaded that the evidence was insufficient to sustain the jury's determination of guilt beyond a reasonable doubt, even though the eyewitnesses' testimony bespeaks the possibility of error.

Affirmed.

---

[1] See, also, State v. Walters, 262 Minn. 26, 113 N. W. (2d) 468; State v. Lytle, 214 Minn. 171, 7 N. W. (2d) 305; State v. Mason, 152 Minn. 306, 189 N. W. 452.

[2] State v. Shansy, 164 Minn. 10, 204 N. W. 467.