## STATE v. RODNEY ELLINGSON.

167 N. W. (2d) 55.

April 11, 1969—No. 41237.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Leonard D. Brod,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

This is an appeal from a judgment of conviction for the crime of aggravated robbery after a trial by jury.

The principal assignment of error is that there was insufficient evidence to convince a jury beyond a reasonable doubt that defendant, Rodney Ellingson, was guilty of aggravated robbery.

It appears from the record that on May 16, 1967, at about 11:55 a. m., Arnold Shapiro was working in the Falls Hardware Store in Minneapolis when a man he later identified as the defendant came in from the left front door and asked for an electric drill. After showing defendant the drill and replacing it on the shelf, Shapiro turned around and faced defendant again, only to see him open his jacket and brandish a gun. Defendant instructed Shapiro to get all the money out of the register and put it in a paper bag. Shapiro testified that he was standing 3 feet from and directly facing the defendant for approximately 10 to 15 minutes. Defendant then ordered Shapiro to lie on the floor and ran out the same door he had entered. After defendant left, Shapiro leaped to his feet, grabbed a newspaper and pencil, ran out the other entrance, and hurriedly marked down the license number and make of vehicle in which defendant was making his getaway. The license number, 5CL-942, was given to Minneapolis police. The description of the car, a 1959 Chevrolet, was subsequently verified from a car identification manual. Thereafter, Minneapolis detectives showed Shapiro a book of "mug" photographs and after viewing approximately 25 to 50 of them he identified defendant's.

On June 1, 1967, the detectives, armed with information that the robber was Rodney Ellingson, a man known to them, and that he had been seen leaving the robbery site in a 1959 Chevrolet with a purported license number of 5CL-942, noticed a 1959 Chevrolet matching the description of the suspect's vehicle and bearing the license number 5DL-942. The officers recognized defendant as they drove up alongside the vehicle and immediately perfected his arrest. On the same day, Shapiro unhesitatingly identified defendant at a lineup consisting of four white men.

■ There is abundant authority in Minnesota supporting the proposition that it is enough to satisfy the requirements as to identification if a witness testifies that it is his belief, opinion, and judgment that the defendant is the man he saw commit the crime charged. State v. Farmer, 179 Minn. 516, 229 N. W. 789; State v. Perra, 266 Minn. 545, 125 N. W. (2d) 44.

■ Uncertainty in identification testimony affects its weight rather than its admissibility and is strictly a consideration for the jury. State v. Sutton, 272 Minn. 399, 138 N. W. (2d) 46. This court's clear enunciation of the doctrine of identification evidence in the Sutton case disposes of defendant's claim. This court said (272 Minn. 402, 138 N. W. [2d] 48):

"* * * [T]he believability and persuasive force of the identification testimony, as well as the defense evidence in the nature of an alibi, was for the jury. Applying well-settled rules, we are not persuaded that the evidence was insufficient to sustain the jury's determination of guilt beyond a reasonable doubt, even though the eyewitnesses' testimony bespeaks the possibility of error."

Defendant argues that Shapiro's original description to the police was weak and faulty because it did not include any identifying marks or scars such as were clearly visible on defendant's forehead. Defendant wore a hunter's cap with a bill on it, and while the record is silent, it may readily be assumed that the cap was pulled over his eyes. Defendant also argues that the presence of the cap would have made it impossible for Shapiro to have described the color of the robber's hair. Nothing in the record indicates that the cap covered all of defendant's hair.

Defendant relies upon United States v. Melillo (E. D. N. Y.) 275 F. Supp. 314, to support the theory that a jury verdict cannot be allowed to stand where the evidence is such that a reasonable jury could not be convinced of the defendant's guilt. That was a tax evasion case in which the court was forced, by the circumstances, to grant the defendant's motion for a directed verdict, thereby preventing the jury from speculating as to the probable guilt of the defendant. It has no application here.

Defendant quoted as his other authority United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149, by taking a statement out of context concerning the vagaries of eyewitness identification. That case involved a lineup, but upon the facts has no application here. It will also be observed that the lineup in the instant case took place June 1, 1967, and the Wade decision came down June 12, 1967, with no retroactive effect.

It will be noted that in reviewing the sufficiency of the evidence we do not try the facts anew. Our responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt is sufficient to permit the jury to reach that conclusion. State v. Daml, 282 Minn. 521, 162 N. W. (2d) 240; State v. Keezer, 274 Minn. 292, 143 N. W. (2d) 627.

In State v. Carmichael, 275 Minn. 148, 145 N. W. (2d) 554, and State v. Houge, 280 Minn. 372, 159 N. W. (2d) 265, this court made it clear that the weight and credibility of disputed evidence were for the jury. Furthermore, applying the standards set forth in State v. Schabert, 222 Minn. 261, 24 N. W. (2d) 846, and State v. Armstrong, 257 Minn. 295, 101 N. W. (2d) 398, this court will, upon review of the evidence in the case of a claim that it was insufficient to support the verdict, take the most favorable view of the state's testimony to which it is reasonably susceptible. In doing so, this court must assume that the jury believed the state's testimony and disbelieved that which contradicted it. It is apparent that the jury, acting within its province, was unimpressed with alleged discrepancies in Shapiro's testimony assigned as error here and chose to believe his testimony as the most dependable and trustworthy.

Shapiro was positive in his identification, fully and lucidly explaining his careful observations of defendant while he was committing the robbery. Shapiro's unimpeached testimony exceeds the standards set forth in State v. Sutton, *supra*, as necessary to sustain a verdict of guilty beyond a reasonable doubt. Shapiro stated that he made a study of the man's face, "and I kept my eyes on him at all times except while just to see where I was going. But tried to keep my eyes on him at all times so I could identify him." He had at least a continuous period of 10 to 15 minutes to make his observations. We think this certainly is more than ample time to allow a man with normally operating senses to form a mental picture sufficient to support his identification in and out of the courtroom.

Clearly, the evidence of Shapiro, coupled with the description and license number of defendant's vehicle obtained as he made his getaway, is sufficient to sustain a verdict of guilty of the crime of aggravated robbery upon the facts herein beyond a reasonable doubt. The evidence might well be termed as overwhelming and amply supporting the conviction.

Affirmed.